**Rosemary Cromich McDONNELL, Plaintiff,**

v.

**MILLER OIL CO., INC., Defendant.**

**Civil Action No. 2:95CV638.**

United States District Court, E.D. Virginia, Norfolk Division.

June 20, 1997.

---

Matthew Wayne Tiffany, Virginia Beach, VA, for Plaintiff.

Stanford Beryl Adler, Adler, Rosen & Peters, P.C., Virginia Beach, VA, for Defendant.

*OPINION AND ORDER*

DOUMAR, District Judge.

This matter is before the Court upon the motion of the plaintiff for attorney's fees pursuant to the relevant provisions of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*. Because the reasonableness of attorney's fees is largely a question of factual circumstances, the Court discusses the background of this case in some depth.

### I. Background

The plaintiff, Ms. McDonnell, sued her former employer, the defendant Miller Oil Co., alleging that the defendant violated the FMLA by failing to reinstate her following her maternity leave.

The evidence presented at trial indicated the following: The plaintiff, Rosemary Cromich McDonnell, was employed by the defen-

dant as a full-time financial analyst until December 23, 1994, on which date she began her maternity leave. She had been offered the position after she worked for Miller Oil part-time while attending business school at the College of William & Mary. Miller Oil was her first and only full-time employer after she received her graduate degree in business administration in May of 1990.

At trial, the plaintiff contended that when asked by her supervisor, Michael Miller, prior to her leave if she would be returning, she answered that she was thinking about returning for part-time employment, to which Michael Miller responded that he would inquire whether such was available. Soon thereafter, Augustus "Gus" Miller, president of Miller Oil Co. and father of Michael Miller, also asked the plaintiff if she would return to work, and the plaintiff said she would. Gus Miller responded that the plaintiff should wait to see how she feels (presumably after giving birth) and not decide immediately.

The plaintiff subsequently took six weeks maternity leave plus an accrued two weeks vacation. Incidentally, she received a bonus of $1000.00 while on maternity leave. She testified, however, that during her leave her desk had been cleared and her personal and professional items warehoused. The plaintiff also claimed that she met with Michael Miller on Thursday, February 23, 1995, in reference to returning to work the following Monday, February 27, 1995. The plaintiff testified that Miller told her that her old job was not available, and he began to describe part-time employment opportunities. According to the plaintiff, these part-time jobs were never actually offered to her, and Miller ultimately stated that there were no openings available, because the plaintiff's work had been satisfactorily completed (presumably by other employees) while she was on leave. The plaintiff further testified that Michael Miller then stated that the plaintiff could collect unemployment. She has since received and exhausted her unemployment benefits.

The defendant painted a different picture at trial. The defendant contended that prior to the initiation of her maternity leave, the plaintiff informed Michael Miller that she did not want a full-time position upon her return.

Michael Miller subsequently met with three other Miller Oil supervisors to determine the availability of part-time employment. Miller then offered these to the plaintiff before her leave began, but the plaintiff declined them. Instead, the plaintiff left "up in the air" which job she wanted upon her return.

The defendant offered testimony that all employees' personal effects were warehoused like the plaintiff's personal effects, because Miller Oil Co. was undergoing facility repair and renovation, and many of Miller Oil's employees were being relocated. The defendant also pointed to the bonus the plaintiff received during her leave as evidence that Miller Oil expected the plaintiff to return to work after her leave ended.

The defendant alleged that eight weeks after the start of her leave, on Monday, February 27, 1995, the plaintiff again met with Miller about returning for work that day. The defendant presented testimony that the plaintiff again asked for part-time employment, but refused all the part-time job opportunities that the defendant offered her previously. Shortly prior to trial, defendant offered plaintiff a full time position, but the plaintiff refused.

Aside from the issue of liability under the FMLA, another central dispute was whether the plaintiff reasonably attempted to mitigate her damages, if in fact the jury were to find that the defendant violated the FMLA. The plaintiff presented evidence that she mailed her resume to approximately eighty-four companies, and that she interviewed with Prudential in September of 1995. This was the plaintiff's only interview in the nearly eleven months between the dispute with Miller and the commencement of trial.

The defendant argued that the plaintiff admitted that each of the eighty-four resumes were sent without a cover letter, in blank envelopes, and without regard to whether the addressee companies were actively recruiting new employees. In addition, the eighty-four resumes were mailed at the rate of three or four per week for twenty-six weeks. This resume campaign corresponded with and ended exactly at the point

that the plaintiff's unemployment benefits ran out.[1]

The defendant also showed that the plaintiff was denied unemployment benefits for a one-week period, because she failed to respond to an employment opportunity, which was made known to her by the Virginia Employment Commission ("VEC"). The VEC's letter to the plaintiff required a response from the plaintiff, stating:

> It is important that you call us immediately even if you are not interested in this particular job.... If you are receiving unemployment benefits, failure to respond within two (2) weeks of this notice may affect your eligibility to receive future benefits.

The plaintiff neither contacted the potential employer about the job nor informed VEC that she was not interested. The VEC consequently suspended the plaintiff's benefits for one week, stating that "[t]he Virginia Unemployment Compensation Act provides that in order to be eligible for benefits, you must report to the Virginia Employment Commission as directed. Since you failed to meet this requirement, you are ineligible for benefits during the [stated] period." The plaintiff testified that she failed to act on the notice from VEC because she forgot, but she later stated that she may not have read the letter completely. In any event, she clearly did not contact the potential employer or the VEC.

The defendant further successfully showed that the plaintiff failed to read the Sunday classifieds regularly, and that the plaintiff did not seek the assistance of either an employment agency or the placement offices of either of her alma maters.

At the conclusion of the trial, the jury returned a verdict for the plaintiff, but fixed the plaintiff's damages at zero dollars ($0.00). Subsequently, the Court awarded the plaintiff damages in the nominal amount of $1.00, doubled those damages to $2.00 pursuant to the FMLA's liquidated damages provision, and with accrued interest entered judgment for the plaintiff in the amount of $2.10.

Thus, in returning a verdict for the plaintiff, the jury necessarily found that on Thursday, February 23, 1995, the plaintiff was ready, willing, and able to return on February 27, 1995 to the position she held prior to the commencement of her leave, and that Miller Oil did not restore her to the position she held when her leave began, or to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment. The jury also necessarily found, however, that the defendant satisfied its burden of showing that the plaintiff failed to mitigate her damages—in other words, the jury found that the plaintiff has not wanted to work at all since the events of February 23, 1995.

Following the plaintiff's appeal from this Court's rulings on several issues, the Court of Appeals affirmed this Court in all respects. *See McDonnell v. Miller Oil Co., Inc.*, No. 96–1661, 1997 WL 153820 (4th Cir. 1997) (unpublished disposition). Based upon the jury's finding of a violation of the FMLA, the plaintiff now moves for attorney's fees in the amount of $21,881.57 and associated costs in the amount of $1,865.32.

## II. Analysis

After researching the matter at some length, this Court can find no published opinion discussing awards of attorney's fees pursuant to the FMLA. Because of the novelty of the questions involved, particularly given the lack of success for the plaintiff by her attorneys, the Court comprehensively reviews the relevant legal principles.

### A. Legal Principles

Section 107 of the FMLA, codified at 29 U.S.C. § 2617, provides in relevant part the following:

> (3) Fees and costs. The court in such an action shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant.

Thus, the FMLA's attorney's fee provision provides yet another variation in a growing

---

1. Evidently, Unemployment Commission officials apparently required that the plaintiff at least present some evidence that she was seeking work.

number of statutory provisions designed to shift the burden of attorney's fees from the litigation's victor to the litigation's vanquished. Such provisions commonly have been enacted not only in the civil rights litigation context, such as in Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–5(k), but also in such diverse statutes as the Freedom of Information Act, 5 U.S.C. § 552, the Clean Air Act, 42 U.S.C. §§ 7601 *et seq.*, the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 *et seq.*, and even in the Rules of Civil Procedure, *see* Fed. R. Civ. Proc. 11.

These enactments primarily endeavor to bypass the otherwise firmly entrenched "American Rule," that is, that a litigant ordinarily may not collect attorney's fees from an opposing party. *See, e.g., Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975) (defining the American Rule); *Mullins v. Richlands Nat'l Bank,* 241 Va. 447, 403 S.E.2d 334, 335 (1991) (same). Some scholars have criticized the American Rule and have counseled the adoption of the "English Rule." *See, e.g.,* Albert A. Ehrenzweig, *Reimbursement of Counsel Fees and the Great Society,* 54 Cal. L.Rev. 792 (1966). The English Rule typically permits the prevailing party to obtain attorney's fees. *See Alyeska Pipeline,* 421 U.S. at 247, 95 S.Ct. at 1616. Apparently, English courts have been permitted to award attorney's fees to successful plaintiffs since 1278, *see* Statute of Gloucester, 1278, 6 Edw. 1, c. 1, and have been permitted to award fees to successful defendants since 1607. *See* Statute of Westminster, 1607, 4 Jac. 1, c. 3; *see also Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 717, 87 S.Ct. 1404, 1406, 18 L.Ed.2d 475 (1967) (discussing the history of the English Rule). Nevertheless, the American Rule remains the law of the United States, and absent contractual provision or extreme misconduct, generally only legislative authorization will permit a court to award a party attorney's fees. *Pennsylvania v. Delaware Valley Citizens' Council,* 478

U.S. 546, 561–62, 106 S.Ct. 3088, 3096, 92 L.Ed.2d 439 (1986).

■ Therefore, because this Court generally lacks the inherent authority to award attorney's fees absent congressional authorization,[2] this Court holds that the attorney's fees provision in the FMLA must be construed strictly. Mindful of such, the Court returns to the express statutory language of the FMLA's attorney's fee provision. Stripped of language unnecessary to include here, 29 U.S.C. § 2617(a)(3) states, "[t]he court … shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee…." This provision contains interesting distinctions from other statutory attorney's fee provisions yet omits language commonly used in many of those provisions. Pursuant to the Supreme Court's holding in *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 523–25, 114 S.Ct. 1023, 1028, 127 L.Ed.2d 455 (1994) (holding that even similar attorney's fees provisions in different statutes cannot necessarily be construed similarly), this Court must not treat distinctions among congressionally-enacted attorney's fees provisions as insignificant variation. *See Stomper v. Amalgamated Transit Union, Local 241,* 27 F.3d 316, 318 (7th Cir.1994) (interpreting *Fogerty* in this manner). Thus, the Court discusses each salient point in the FMLA's attorney's fees provision in turn.

■ First, the Court observes that Congress used the word "shall" in the FMLA's attorney's fee provision instead of "may," such as is used in 42 U.S.C. § 1988, Title VII of the Civil Rights Act of 1964, and indeed in most other congressionally-enacted attorney's fees provisions. Courts typically hold that these provisions using "may" places the decision about whether to award *any* attorney's fees within the sound discretion of the district court. *See Carter v. Burch,* 34 F.3d 257, 265–66 (4th Cir.1994). Thus, the use of the word "shall" in the FMLA's attorney's fee provision constitutes a meaningful distinction: the FMLA's attorney's fee provision makes mandatory rather than discretionary the awarding of reasonable attorney's

---

2. This is not to indicate that sanctions may not be imposed on a party or an attorney by virtue of misconduct. In imposing the sanctions, a district court may well assess attorney's fees against the offending party.

fees if certain conditions are met. *C.f. Burnley v. Short,* 730 F.2d 136, 141 (4th Cir.1984) (holding that the Fair Labor Standards Act, which uses the word "shall," *requires* district courts to award attorney's fees); *see also Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir.1994) (same).

■ The second distinguishing characteristic of the FMLA's attorney's fee provision is the description of the event triggering the mandatory award of attorney's fees. Most attorney's fees provisions permit the award of attorney's fees only to a "prevailing" or "successful" party, and the precise meaning of such has been the subject of intense debate. *See, e.g., Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992); *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The Supreme Court has construed "prevailing party" to include those parties who "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit," *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939, even when the success is obtained in settlement rather than judgment. *Farrar,* 506 U.S. at 111, 113 S.Ct. at 573 (interpreting 42 U.S.C. § 1988).

By using the phrase, "in addition to *any judgment,*" however, the FMLA's attorney's fee provision may be simultaneously broader and more narrow than those provisions referring to prevailing or successful parties. The FMLA's attorney fee provision may be more narrow because it apparently requires a judgment, rather than a mere settlement. *But see Stomper,* 27 F.3d at 320 (Cudahy, J. *dissenting* ) (noting that the legislative history of the FMLA is "replete" with references to the phrase, "prevailing plaintiffs"). This would comport with the majority's holding in *Stomper* requiring a favorable *judgment* to obtain attorney's fees under the Labor–Management Reporting and Disclosure Act ("LMRDA"). *See Stomper,* 27 F.3d at 318 (noting in passing that the LMRDA and FMLA have nearly identical language but that no court had yet decided whether a judgment was required under the FMLA's attorney's fee provision). Second, the FMLA's attorney's fee provision is certainly more narrow than "prevailing party" because

it is unilateral: only *plaintiffs* are eligible for attorney's fees. More relevant to the instant case, however, is that the FMLA's attorney's fee provision is broader because "*any* judgment" likely includes such limited and even Pyrrhic victories for a plaintiff that might fail to meet the Supreme Court's test of a "prevailing party."

In conclusion, therefore, this Court holds that the unique language in the FMLA's attorney fee provision distinguishes this case from the Fourth Circuit's opinion in *Carter* that a district court has discretion to award no attorney's fees. Relying upon *Farrar, Carter* held that when a jury awarded a plaintiff only $1.00 in nominal damages after finding that the plaintiff proved his claim under 42 U.S.C. § 1983, the district court was within its discretion to award no attorney's fees despite the attorney's fees provision in 42 U.S.C. § 1988. *Carter,* 34 F.3d at 265–66. Indeed, if the FMLA's attorney's fee provision so permitted, this Court would not award attorney's fees in the instant case, because a jury 'awarding' a plaintiff zero dollars may well be tantamount to a "finding for the defendant perversely thus expressed." *Rawle v. McIlhenny,* 163 Va. 735, 177 S.E. 214, 221 (1934). Nevertheless, because of the distinctive language in the FMLA's attorney's fee provision, this Court concludes that it *must* award the plaintiff some meaningful measure of attorney's fees, despite the plaintiff's rather limited victory at trial. Thus, a district court's discretion in determining the reasonableness of attorney's fees is limited significantly by the mandatory nature of the FMLA's attorney's fees provision.

■ Be that as it may, this Court holds that *Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 (4th Cir.1978), in which the Fourth Circuit directed district courts use the factors enunciated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974) to determine the reasonableness of attorney's fees "in any case where such determination is necessary", *Barber,* 577 F.2d at 226, guides the inquiry determining the reasonableness of attorney's fees pursuant to the FMLA. *c.f. Gilliam v. Montgomery Ward & Co., Inc.,* 912 F.Supp. 195, 198 (E.D.Va.1996) (holding

that the *Barber* factors apply to determining reasonableness of attorney's fees under the FLSA). There is, however, no strict manner in which the factors are to be considered and applied. *See E.E.O.C. v. Service News Co.,* 898 F.2d 958, 965 (4th Cir.1990); *Trimper v. City of Norfolk,* 846 F.Supp. 1295, 1303 (E.D.Va.1994). The *Barber* factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases.

*Barber,* 577 F.2d at 226 n. 28. First applying certain *Barber* factors, the Court must determine a reasonable hourly rate and the number of hours reasonably expended by counsel, then multiplies the rate by the hours in order to determine the "lodestar figure," which is generally considered the reasonable fee in the case. *Service News Co.,* 898 F.2d at 965; *Trimper,* 846 F.Supp. at 1304. Adjustments may be made as necessary under the remaining *Barber* factors if the lodestar figure is unreasonably high or low. *Blum v. Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984); *Trimper,* 846 F.Supp. at 1304. In the end, however, " 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.' " *Farrar,* 506 U.S. at 114, 113 S.Ct. at 574 (citing *Hensley v. Eckerhart,* 461 U.S. 424, 436, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983)); *see also Carroll v. Wolpoff & Abramson,* 53 F.3d 626, 631 (4th Cir.1995) (upholding district court award of

$500.00 in attorney's fees in relation to a $50.00 verdict for plaintiff and stating that the fee award "was, albeit modest, ten times the amount recovered from defendant. It is not apparent that a party satisfying a judgment of $50 must then be compelled to pay almost $10,000 in fees.")

The Court determines a reasonable attorney's fee in the instant case in the next section.

## B. Application of Barber Factors

### 1. Time and Labor Expended

■ According to the time sheets that plaintiff has submitted to the Court, the attorneys spent in the vicinity of 200 hours on this case. After reviewing the file, the Court recalls that this was a vigorously litigated claim—for reasons beyond this Court's comprehension—involving several pre-trial and post-trial motions. The Court must first consider the other *Barber* factors before determining the number of hours that would be reasonable.

### 2. Novelty and Difficulty of the Questions Raised

Although the FMLA was a very new statute at the time this lawsuit was filed, this case was a very simple case, involving few issues. In fact, as of *today*, there are a total of six case abstracts dealing with any portion of the FMLA in the United States Code Service. Much of the legal research in this case could have revolved around reading the statute and its annotation in less than an hour. Nevertheless, because caselaw was so sparse, an attorney unfamiliar with civil rights litigation might be well advised to gain a background in other employment discrimination statutes. Certainly, a brief perusal of Judge Charles R. Richey's excellent treatise, *Manual on Employment Discrimination Law and Civil Rights Actions in the Federal Courts* (2nd ed.1994 and supplement) would have sufficed.[3]

---

**3.** Judge Richey's treatise is an outstanding resource, which the Federal Judicial Center once made available for free to federal courts and their libraries. Unfortunately, the Federal Judi-

cial Center has discontinued its financial support for Judge Richey's treatise, but a private publisher has wisely agreed to make available Judge Richey's treatise—albeit for a fee.

### 3. The Skill Required to Perform the Legal Services Rendered

Any competent litigator familiar with federal court practice could have handled this case.

### 4. Attorney's Opportunity Costs

The Court has been made aware of no opportunities the plaintiff's attorneys declined because of this case.

### 5. The Customary Fee for Like Work

The attorneys' claim of an hourly rate of $100.00 out of court time, $125.00 for in-court time. The Court takes notice that this is a fair rate of pay for employment-related civil rights cases in this area.

### 6. The Attorneys' Expectations At The Outset

At the outset of litigation, the plaintiff's attorneys filed a motion for judgment demanding huge amounts of punitive and compensatory damages in this case, ignoring the remedial framework of the FMLA. In addition, the Court cannot imagine that the attorneys did not know of the plaintiff's utter failure to mitigate her damages. Thus, the only reasonable expectation in this case would have been quite modest.

### 7. Time Limitations Imposed by the Client or Circumstances

The Court has not been made aware of any unusual time limitation in this case.

### 8. The Amount in Controversy and the Results Obtained

As the Court has already noted, this is a case in which the plaintiff won a very limited victory, and the Court believes that she was very fortunate to get even that.

### 9. Experience, Reputation, and Ability of the Attorneys

The Court is loathe to comment on attorneys' abilities. Some attorneys are excellent negotiators but less skilled trial attorneys. Others do well in trial, but fail to settle cases when such would be in his or her client's best interests. Still others have great strengths in legal writing.

Be that as it may, the Court apparently must comment. As such, the Court finds that the plaintiff's counsel in this case possesses average experience, reputation, and ability.

### 10. The Undesirability of the Case

This case appears unremarkable in this regard.

### 11. The Nature and Length of the Attorney–Client Relationship

The Court has not been made aware of anything unusual in this regard.

### 12. Attorney's Fees Award in Similar Cases

As noted at the outset of this opinion, because of the recent enactment of the FMLA, this Court can find no published case dealing with attorney's fees under the FMLA.

Considering all of these factors, the Court simply cannot accept as reasonable all of the time that plaintiff's attorneys claim in this case. Surely at least 10 percent of the attorneys' time both in court and out of court was spent attempting to prove damages. They failed in this regard, at the very least. Thus, the Court exercises its discretion as follows:

1. The Court hereby **AWARDS** the plaintiff $1,865.32 in costs, which is the entire amount requested by the plaintiff.

2. The Court hereby **AWARDS** the plaintiff $19,698.81 in attorney fees which represents 10 percent less than the $21,887.57 in attorney fees that the plaintiff requested.

### III. Conclusion

For the reasons stated above, the plaintiff's motion for the award of attorney's fees and costs is **GRANTED** in part and **DENIED** in part. Defendant is hereby **ORDERED** to pay the plaintiff costs in the amount of $1,865.32 and attorney's fees in the amount of $19,698.81.

**IT IS SO ORDERED.**