# In the
# United States Court of Appeals
## For the Seventh Circuit
––––––––––––

Nos. 07-2009, 07-3358

RICHARD FRANZEN,

*Plaintiff-Appellant,*

*v.*

ELLIS CORPORATION,

*Defendant-Appellee.*

––––––––––––

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 641—**Martin C. Ashman**, *Magistrate Judge*.

––––––––––––

ARGUED FEBRUARY 21, 2008—DECIDED SEPTEMBER 10, 2008

––––––––––––

Before FLAUM, RIPPLE and ROVNER, *Circuit Judges*.

RIPPLE, *Circuit Judge*.  On January 29, 2003, Richard Franzen filed a complaint against Ellis Corporation ("Ellis"), his former employer. He alleged, inter alia, that Ellis had interfered unlawfully with his right to take medical leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a)(1), and had discriminated against him for taking leave, in violation of 29 U.S.C. § 2615(a)(2). Upon motion of Ellis, the trial was bifurcated

into liability and damages phases. A jury heard evidence on the issue of liability and rendered a verdict in favor of Mr. Franzen. The district court then held a bench trial on the issue of damages. It found that Mr. Franzen was not entitled to any damages; therefore, it also refused to grant Mr. Franzen's request for attorneys' fees. For the reasons set forth in this opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

### A.

Ellis Corporation employed Mr. Franzen as a mechanical engineer from 1999 until mid-2002. At the end of April 2002, Mr. Franzen was seriously injured in an automobile accident. On May 2, 2002, he called Jennifer Ruffolo, Ellis' Human Resources Manager, and informed her that he had been injured and was unsure when he would be able to return to work. During this conversation, Ms. Ruffolo requested that he provide her with a doctor's note in order to establish his eligibility to receive FMLA leave and short-term disability benefits.

On May 11, 2002, Mr. Franzen received in the mail a packet that contained a number of forms, including a medical certification form. Ellis employees were required to complete this paperwork in order to receive short-term disability and FMLA benefits. The forms stated that Mr. Franzen had fifteen days from the date of receipt to return the paperwork or his absences would be con-

sidered unexcused and he would not be entitled to these benefits. His paperwork, including his medical certification form, therefore was due to the company no later than May 28, 2002.[1]

After Mr. Franzen's conversation with Ms. Ruffolo, Ellis began paying Mr. Franzen short-term disability benefits in anticipation of receiving proper medical documentation. Nevertheless, Ellis claimed that, despite numerous calls informing him of the necessity of the documentation and the consequences of not sending it in a timely fashion, it did not receive the proper medical certification from Mr. Franzen by May 28, 2002. Accordingly, on May 28, 2002, Ellis denied Mr. Franzen's request for FMLA leave.

Because Mr. Franzen's request for FMLA leave had been denied, his absences from April 23 through May 28 were considered unexcused. Ellis therefore terminated Mr. Franzen's employment on May 28, 2002, under the terms of its Attendance and Punctuality policy. That day, Ellis sent Mr. Franzen a letter notifying him that both his short-term disability benefits and his employment had been terminated because of his unexcused absences.

## B.

Complaining of severe back pain, Mr. Franzen made numerous visits to physicians in the weeks after his

---

[1] This date is fifteen days from the date of receipt, plus two additional days because May 26 was a Sunday and May 27 was a holiday.

accident. When conservative treatment failed, he visited Dr. Avi Bernstein, an orthopedic surgeon. On June 13, 2002, Dr. Bernstein issued Mr. Franzen a doctor's note stating that he was temporarily disabled and unable to work until further notice.

In July 2002, Dr. Bernstein performed surgery to repair Mr. Franzen's spine. Although the surgery was successful from a medical standpoint, Mr. Franzen still complained of severe pain in the months that followed. On December 9, 2002, in connection with Mr. Franzen's application for Social Security benefits, Dr. Bernstein offered his medical opinion that Mr. Franzen was permanently and totally disabled and that he therefore could not return to any of his prior work activity or any other work. At no time since his discharge from Ellis did Mr. Franzen seek alternate employment.

## C.

In January 2003, Mr. Franzen filed a complaint in the United States District Court for the Northern District of Illinois, alleging that Ellis had interfered unlawfully with the exercise of his FMLA rights under 29 U.S.C. § 2615(a)(1). He also alleged that Ellis had discriminated against him in violation of 29 U.S.C. § 2615(a)(2), breached his employment contract by failing to provide short-term disability benefits, and violated a state law that prohibits retaliatory discharge.

Ellis moved for summary judgment on all claims. The district court dismissed both the contract claim and the

retaliatory discharge claim on summary judgment, and
Mr. Franzen did not challenge this decision. The district
court denied Ellis' summary judgment motion on the
FMLA claims. It held that a question of fact existed as to
whether Mr. Franzen had supplied Ellis with the
requisite documentation necessary for his receipt of
FMLA leave.

Ellis then moved to bifurcate the trial on the FMLA
claims into separate liability and damages phases. Before
the district court could rule on this motion, however,
both parties consented to the exercise of jurisdiction by a
United States magistrate judge. Upon reassignment to
that judicial officer, the motion to bifurcate was granted.

In April 2006, a jury trial was held on the issue of liabil-
ity. The sole issue of fact litigated before the jury was
whether Ellis had received the requisite medical docu-
mentation from Mr. Franzen prior to May 28, 2002. If it
had not received the requisite documentation, Mr. Franzen
was not entitled to FMLA protection. If it had, however,
then its termination of Mr. Franzen's employment was
in violation of the FMLA.

In support of his contention that Ellis in fact had re-
ceived his physician's note prior to the deadline, Mr.
Franzen presented the testimony of Tamara Herman, a
secretary at his doctor's office.[2] Ms. Herman testified
that, at least three times prior to May 28, she had faxed

---

[2] As a sanction for his failure to comply with a number of the
court's prior discovery orders, Mr. Franzen was barred from
testifying himself at trial.

to Ellis' Human Resources Department a note from Mr. Franzen's physician, Dr. Konowitz, stating that he was temporarily unable to return to work.[3] In its defense, Ellis introduced testimony from Ms. Ruffolo, its Human Resources Manager. Ms. Ruffolo testified that she had not received the necessary documentation from Mr. Franzen before May 28, 2002, despite numerous phone calls informing him that she needed to receive it by that date. Specifically, she denied having received any fax from Dr. Konowitz's office prior to May 28.

At the conclusion of the trial, the jury was given the following interrogatory:

> Did Plaintiff prove by a preponderance of the evidence that Defendant received the requested medical documentation by May 28, 2002? If you answer yes, then you are finding in favor of the Plaintiff. If your answer is no, then you are finding in favor of the defendant.

Tr. at 72. After deliberation, the jury answered "yes," finding in favor of the plaintiff. *Id*. On April 20, 2006, the

---

[3] Outside the presence of the jury, in an attempt to procure the admission of the doctor's note itself into evidence, Mr. Franzen proffered the testimony of Dr. Konowitz regarding the authenticity of the note. During this examination, Dr. Konowitz stated that, based upon the information available to him at the time, he believed that Mr. Franzen could have returned to work full time as of May 31, 2002. Tr. Vol. 14 at 64. This testimony was not refuted by the company at this time, however, because it went to the question of damages rather than liability.

court entered the following docket entry: "Jury returns its verdict in favor of plaintiff Richard Franzen and against Ellis Corporation as to liability only." R.188.

The district court then held a bench trial to determine the appropriate amount of damages. Mr. Franzen sought nearly $1 million in back pay and front pay, contending that he would have been able to work and earn wages from May 28, 2002 (the date of his discharge) through the time of his planned retirement at age 65.

In response, Ellis presented evidence that Mr. Franzen was either unwilling or unable to return to work at any time after his accident. It pointed to Mr. Franzen's prior deposition statements in which he admitted that he was totally incapacitated and unable to work at all times after his accident. Ellis also presented testimony from Dr. Bernstein, the surgeon who had performed spinal surgery on Mr. Franzen in July 2002. He stated that Mr. Franzen was permanently disabled and unable to return to work as of at least June 2002. Ellis noted that Mr. Franzen had refused to appear for depositions during discovery because he had claimed to have been too ill to attend.[4] Finally, Ellis contended that, if the court found Mr. Franzen's argument that he was able to return to

---

[4] Mr. Franzen filed a number of "emergency motions" requesting that he not be required to submit to depositions because he was too ill to attend. Ellis filed a motion for discovery sanctions. The district court ultimately barred Mr. Franzen from testifying at trial as a sanction for his failure to comply with discovery.

work immediately after his discharge to be credible, then he was barred from recovery because he had failed to mitigate his damages by seeking alternate employment.

On April 3, 2007, the district court concluded that Mr. Franzen had not proven that he was entitled to any damages. It stated in open court that "it is extremely clear that the plaintiff was unable to work from the time of his accident," R.279 at 28, and that, even if Mr. Franzen had been physically able to work, "there is no evidence that he mitigated his damages . . . he never tried to work," R.279 at 30. The court therefore entered the following minute order:

> The court finds that there are no damages that have been proven to this court, and therefore, the amount of damages is zero. There being no damages this case is dismissed with prejudice. . . . There are no attorneys' fees available where the defendant has prevailed for the reasons stated in open court. Civil case terminated.

R.253.

Mr. Franzen then filed a motion to alter or amend the judgment. He first contended that he was entitled to an award of attorneys' fees under 29 U.S.C. § 2617(a)(3) because, even if he had failed to prove damages, the jury had found that Ellis violated the FMLA. He also submitted that Ellis should have been estopped at the damages trial from introducing evidence of Mr. Franzen's inability to return to work because the issue already had been decided implicitly by the jury. Finally, Mr. Franzen argued that the district court improperly denied him his right to a jury trial on the issue of back pay.

The district court concluded that the jury verdict was not a "judgment" on the issue of liability. Therefore, the jury verdict was insufficient to satisfy the "judgment" requirement of the FMLA's fee-shifting provision. It also decided that estoppel was inappropriate here because the jury had not been asked to determine whether Mr. Franzen could have returned to work at the end of his twelve-week leave period. Finally, he concluded that back pay was an equitable remedy, and therefore a jury trial on the issue of damages was not required. Accordingly, the court denied the motion to alter or amend the judgment. Mr. Franzen timely appealed.

## II.

## DISCUSSION

### A.

Mr. Franzen first submits that the district court improperly denied him a jury trial on the question of damages, in violation of his rights under both the FMLA and the Seventh Amendment. The district court concluded that a jury trial was not required in this case because the only forms of relief that Mr. Franzen sought—"back pay" and "front pay"—were both equitable in nature. In making this determination, it relied upon language from a number of our cases in which we remarked that back pay, like front pay, is an "equitable remedy." *See, e.g., Doe v. Oberweis Dairy*, 456 F.3d 704, 714 (7th Cir. 2006) (holding that the common law doctrine of comparative fault is not a defense to Title VII because back pay is equitable in

nature); *David v. Caterpillar, Inc.*, 324 F.3d 851, 865-66 (7th Cir. 2003) (stating that "the district court has broad equitable discretion to fashion back pay awards to make the Title VII victim whole" (citation omitted)); *Pals v. Schepel Buick & GMAC Truck, Inc.*, 220 F.3d 495, 500-01 (7th Cir. 2000) (asserting that back pay, like front pay, is an equitable remedy).

As Mr. Franzen notes, however, each of the cases relied upon by the district court involved back pay under Title VII, not the FMLA, and none directly addressed the right to a jury trial under either statute. Furthermore, he submits, the only circuit to have addressed the issue squarely concluded otherwise and held that a plaintiff who requests back pay as a remedy does have a right to a jury trial under the FMLA. *See Frizzell v. S.W. Motor Freight*, 154 F.3d 641, 643-44 (6th Cir. 1998).[5] In *Frizzell*, the Sixth Circuit considered the structure and the legislative

---

[5] At least three district courts have agreed with the Sixth Circuit's interpretation of the FMLA. *See Bryant v. Delbar Prods.*, 18 F. Supp. 2d 799 (M.D. Tenn. 1998); *Helmly v. Stone Container Corp.*, 957 F. Supp. 1274, 1275 (S.D. Ga. 1997); *Sounders v. Fleming Co.*, 960 F. Supp. 218, 219 (D. Neb. 1997). Ellis cites only one case—an unreported, one paragraph case out of the Eastern District of Tennessee—that concluded otherwise. *See Hicks v. Maytag Corp.*, 1995 WL 908171 (E.D. Tenn. July 13, 1995). The Tenth Circuit, in *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 965 (10th Cir. 2002), also noted with approval a district court's decision to hold a jury trial on issues of back pay, which it described as "legal" relief, and a bench trial on issues of front pay, which it saw as "equitable" relief.

history of the FMLA, particularly its close ties to the Fair Labor Standards Act ("FLSA"). Because courts have "uniformly interpreted" the remedial provisions of the FLSA to provide a right to a jury trial, *see Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 347 (1998), and both the structure and the legislative history of the FMLA suggest that Congress intended the remedial provisions of the FMLA to mirror those of the FLSA, the court inferred that Congress had intended to provide a right to a jury trial under the FMLA as well. *Frizzell*, 154 F.3d at 644. It also remarked that reliance on Title VII and ERISA case law for the proposition that back pay is an "equitable" remedy is inappropriate "[b]ecause the FMLA's link to the remedial provisions of the FLSA is stronger than it is to Title VII or ERISA." *Id*. Mr. Franzen submits that we should adopt the Sixth Circuit's holding that the FMLA provides a right to a jury trial for plaintiffs claiming back pay as a remedy for violations of the statute.

Whether a plaintiff seeking back pay under the FMLA is entitled to a jury trial appears to be an issue of first impression in this circuit. It is also, however, an issue that we need not decide at this time. As we shall explain below, the evidence in this case established, as a matter of law, that Mr. Franzen was not entitled to damages because (1) he was unable to return to work at the end of the 12-week FMLA period, and (2) he failed to mitigate his damages. On the evidence in this record, no reasonable jury could have found otherwise. Therefore, if the district court had held a jury trial on the issue of damages, it would have been required to direct a verdict in favor of

Ellis. *See* Fed. R. Civ. P. 50(a). Consequently, we need not decide today whether Mr. Franzen otherwise would have had a right to a jury trial when requesting back pay under the FMLA.

## B.

Mr. Franzen contends that, because the jury determined that Ellis had received the doctor's note prior to the deadline and therefore discharged him in violation of the FMLA, he was entitled to damages. Specifically, he requested damages in an amount equivalent to his lost wages from the date of his discharge to the date of trial ("back pay"), his potential earnings from the date of trial to his planned retirement date of 2011 ("front pay") and liquidated damages and attorneys' fees as provided under the statute.[6] *See* 29 U.S.C. § 2617.

An employee may be entitled to both back pay and front pay as a remedy for losses flowing from an employer's interference with his substantive rights under the FMLA; however, section 2617 provides no relief unless the plaintiff can prove that he was prejudiced by the violation. *See Ragsdale v. Wolverine World Wide Inc.*, 535 U.S. 81, 89 (2002). We have held that a plaintiff may not collect

---

[6] Mr. Franzen did not request nominal damages either before the district court or on appeal; accordingly, we need not determine whether nominal damages otherwise are available under the FMLA. *Cf. Walker v. United Parcel Service, Inc.*, 240 F.3d 1268, 1277-78 (10th Cir. 2001) (holding that nominal damages are not available to plaintiffs under the FMLA).

damages for periods of time in which he otherwise would have been unable to work for the company. *Flowers v. Komatsu Mining Sys., Inc.*, 165 F.3d 554, 557-58 (7th Cir. 1999). An employee also has no right to reinstatement—and, therefore, damages—if, at the end of his twelve-week period of leave, he is either unable or unwilling to perform the essential functions of his job. *See* 29 C.F.R. § 825.214(b); *Colburn v. Park Hanifin/Nichols Portland Div.*, 429 F.3d 325, 332 (1st Cir. 2005). Accordingly, if Mr. Franzen was either unwilling or unable to return to work at the expiration of his FMLA leave, Ellis lawfully could have terminated his employment, and he would not be entitled to damages resulting from this termination.

At the bench trial on damages, Ellis introduced the following excerpt from Mr. Franzen's pre-trial deposition, in which he admitted that he was unable to return to work after his accident:

> Q. Mr. Franzen, have you been employed since you were terminated from Ellis Corporation?
>
> A. No, I have not.
>
> Q. Is there a reason why you have not been employed?
>
> A. Yes.
>
> Q. And what is that reason?
>
> A. I am unable to return to work.
>
> Q. Are you unable to work anywhere?
>
> A. That is correct.
>
> Q. Have you been unable to work since your termination from Ellis Corporation?

A. Since before.

. . . .

Q. At what point did you become unable to work?

. . . .

A. On the date of my auto accident, April 30th.

Q. And when you say you're unable to work, I believe you said in any position. Does that mean you could not have worked in any job in the universe since your auto accident?

A. That's correct.

Q. Including your job at Ellis Corporation?

A. That is correct.

Q. And can I assume that you haven't looked for work since your termination?

A. Correct.

Q. And I'm assuming you haven't looked for work because you are unable to work?

A. Correct.

Q. Did your doctor tell you you were unable to work, or is that your own conclusion?

A. No. My doctor told me.

Q. Which doctor told you that?

A. Dr. Bernstein.

R.216, Ex. 1 at 484-86.

In addition to these admissions, Ellis presented testimony from Dr. Bernstein, Mr. Franzen's spinal surgeon, who confirmed his previous opinion that Mr. Franzen had been disabled and unable to work as of at least June 2002. Ellis also introduced letters written by Dr. Bernstein in connection with Mr. Franzen's application for social security benefits, in which he offered his medical opinion that Mr. Franzen was permanently and totally disabled. Additionally, Ellis pointed to Mr. Franzen's refusal on numerous occasions to appear for depositions in these proceedings—asserting that he was too disabled to participate—as proof that he was unable and/or unwilling to return to Ellis at the end of his FMLA leave period.

As the district court noted, Mr. Franzen presented no credible evidence to rebut Ellis' submission that he was unable and/or unwilling to return to work after his accident. In support of his claim, Mr. Franzen offered only the testimony of two physicians who had treated him after his accident: Dr. Konowitz and Dr. McCune. Dr. Konowitz testified that, based on the information in his file, he knew of no reason that Mr. Franzen would have been unable to return to work as of May 31, 2002. Importantly, however, he also stated that his file contained information on Mr. Franzen only until June 2002, and he was not aware that Mr. Franzen subsequently had undergone surgery to repair his spine. Dr. McCune confirmed that he had given Mr. Franzen a doctor's note clearing him for full-time work as of May 20, 2002; however, he similarly testified that he was unaware of Mr. Franzen's surgery. Furthermore, Dr. McCune's clearance note is of

limited usefulness to Mr. Franzen, considering the fact that Mr. Franzen made no attempt to return to work on May 20—more than a week before he was discharged from Ellis. Finally, Mr. Franzen presented the testimony of Tamara Herman, an administrative assistant to Dr. Konowitz. She testified that she had seen Mr. Franzen come to the doctor's office on one occasion, and she had not noticed him having any problems walking. To the extent that this testimony is at all relevant, it certainly is not indicative of Mr. Franzen's ability to return to work. Indeed, in his brief on appeal, Mr. Franzen does not contend that any evidence in the record showed that he was, in fact, able and willing to work; he contends only that Ellis should have been estopped from presenting evidence otherwise.

Specifically, Mr. Franzen contends that Ellis should have been barred from presenting evidence regarding his ability to return to work at the damages phase of the trial because either (1) it had conceded the issue at the jury trial on liability, or (2) the jury implicitly had decided the issue when it found Ellis liable under the FMLA, and the district court was therefore barred from reaching a contrary conclusion. These arguments are without merit.

As the district court noted, Ellis had no reason to present evidence of Mr. Franzen's inability to return to work at the jury phase of the trial. The sole question before the jury was: "Did Plaintiff prove by a preponderance of the evidence that Defendant received the required medical documentation by May 28, 2002?" Tr. at 72. Mr. Franzen's ability to return to work at the end of his

leave period is not relevant to this question; it is relevant solely to the question of damages. Accordingly, Ellis did not waive its right to contest Mr. Franzen's ability to return to work by waiting to present evidence at the damages phase of the trial.

Under the doctrine of issue preclusion or direct estoppel, a district court may not re-decide factual issues already necessarily determined by a jury. *See United States v. Bailin*, 977 F.2d 270, 276 (7th Cir. 1992); *Lindsey v. Am. Cast Iron Pipe Co.,* 810 F.2d 1094, 1098 (7th Cir. 1987). Mr. Franzen submits that the jury's finding of liability necessarily included a finding that he would have been able to return to work at least by the end of the twelve-week period, and, therefore, the court may not find otherwise at the damages stage of the proceedings.

Each of the cases cited by Mr. Franzen, however, in-volved a jury trial in which the jury had determined both liability and damages issues, and the judge then considered only whether the plaintiff was entitled to equitable remedies. A jury award of back pay necessarily includes a determination that the plaintiff was able to return to work; therefore, under direct estoppel principles, a district court could not refuse to grant equitable relief on the ground that the plaintiff was unable to return to work. *See, e.g., Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 965-66 (10th Cir. 2002). In this case, however, the jury did not consider Mr. Franzen's entitlement to damages; it merely determined that Ellis had received a doctor's note and therefore terminated Mr. Franzen in violation of the FMLA. This conclusion does not necessarily

include a finding that he was entitled to reinstatement or damages. Accordingly, the judge was not precluded from finding otherwise at the damages portion of the trial.

Mr. Franzen's only plausible argument with respect to damages involves the twelve-week period in which Mr. Franzen's employment was protected under the FMLA. Although the FMLA itself does not require that the leave provided to employees be paid, *see* 29 U.S.C. § 2612(c), Ellis voluntarily maintained a company policy of awarding short-term disability pay concurrently with FMLA leave. In fact, Ellis paid Mr. Franzen $1500 biweekly, or 60 percent of his salary, from the date of his injury to the date of his termination. This short-term disability payment, he contends, would have continued for at least twelve weeks had he not been discharged prematurely in violation of the FMLA. Relying on *Strickland v. Water Works & Sewer Board*, 239 F.3d 1199, 1205 (11th Cir. 2001), Mr. Franzen submits that, at a minimum, the district court should have awarded him damages equivalent to the short-term disability pay that he would have received over this twelve-week period.

The district court declined to award Mr. Franzen these damages for three reasons: (1) the court already had dismissed on summary judgment his contract claim for short-term and long-term disability pay, a judgment that Mr. Franzen declined to appeal; (2) Mr. Franzen had waived any right to assert disability pay as a component of his damages because, throughout the proceedings, he had requested only back pay, front pay, liquidated damages and attorneys' fees under the FMLA; and (3) Mr. Franzen made no attempt to mitigate his damages.

We agree with the court's conclusion. We first note that, until his motion to alter or amend the judgment, Mr. Franzen's only mention of an entitlement to disability benefits was in connection with his contract claim. In his initial complaint, Mr. Franzen contended that he was entitled to both short-term and long-term disability benefits under his employment contract with Ellis. The district court concluded otherwise, however, noting that he was an at-will employee and that Ellis' employee handbook, which was cited by Mr. Franzen as the basis for his entitlement to disability benefits, also contained language that specifically disclaimed the creation of a contract. Accordingly, the court determined that Mr. Franzen had no entitlement to either short-term or long-term disability pay, and it dismissed his claim. R.112 at 10. Mr. Franzen declined to appeal this judgment. He cannot now subvert this conclusion by contending that he was entitled to disability benefits during the twelve weeks that he was protected under the FMLA.

Moreover, Mr. Franzen failed to include disability pay as a component of his asserted damages under his FMLA claim until *after* a bench trial on damages was held and a final judgment was entered. In his pre-trial submissions to the court, Mr. Franzen set forth an itemized statement of the damages that he requested. This itemization was limited to back pay, front pay, interest, liquidated damages and attorneys' fees. Nowhere did he mention any entitle-

ment to short-term disability benefits.[7] The Final Pretrial Order similarly contains no reference to disability benefits. Mr. Franzen did not proffer lost disability pay as a form of damages under the FMLA until he filed his Rule 59(e) motion to alter or amend the judgment. At this point, it was too late. *See Sigsworth v. City of Aurora*, 487 F.3d 506, 512 (7th Cir. 2007) ("[I]t is well-settled that a Rule 59(e) motion is not properly utilized to advance arguments or theories that could and should have been made before the district court rendered a judgment." (internal quotation marks omitted)).

Indeed, with respect to disability payments as well as any other form of damages, it is important to note that, under his own theory of the case, Mr. Franzen claims that he was able and willing to return to work as of May 28, 2002. Nevertheless, he admitted in his deposition that he made no effort to obtain another position elsewhere after his termination from Ellis. We have cautioned that a person discharged—even illegally— cannot simply refuse to seek other employment and expect his former employer to pay his salary until he reaches retirement age. *Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 771 (7th Cir. 2006). "The familiar common law duty of mitigating damages is imposed: the employee must make a diligent search for comparable employment." *Id*. If Mr. Franzen's theory of the case is

---

[7] Indeed, even in his motion to alter or amend the judgment and his brief on appeal, Mr. Franzen failed to quantify the amount of disability pay to which he believes he is entitled.

true, and he in fact was able to return to work as soon as May 28, 2002, then his failure to mitigate his damages by seeking substitute employment was unreasonable and bars his recovery of disability benefits, as well as any other form of damages requested by Mr. Franzen.

In sum, we conclude that Mr. Franzen failed to prove that he was prejudiced by Ellis' violation of the FMLA. Overwhelming evidence in the record shows that he was, at all times after his accident, unable and/or unwilling to return to work. Mr. Franzen made no effort to rebut Ellis' overwhelming evidence that he had failed to mitigate his damages. Accordingly, he cannot succeed on his FMLA claim.

## C.

Finally, Mr. Franzen contends that, regardless of whether he is entitled to damages, he is entitled to an award of attorneys' fees because he proved that Ellis had interfered unlawfully with his rights under the FMLA. *See* 29 U.S.C. § 2617(a)(3) ("The court in such an action *shall*, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee . . . ." (emphasis added)).

Unlike most other statutory fee-shifting provisions, section 2617 *requires* an award of attorneys' fees to the plaintiff when applicable. The award is not left to the discretion of the district court. *Id.*; *see also Sherry v. Protection, Inc.*, 14 F. Supp. 2d 1055, 1057 (N.D. Ill. 1998); *McDonnell v. Miller Oil Co., Inc.*, 968 F. Supp. 288, 292 (E.D. Va. 1997). In this way, it is more favorable toward prevail-

ing plaintiffs than many other statutory fee-shifting provisions. *See McDonnell*, 968 F. Supp. at 293. Furthermore, other courts have noted that the fee-shifting provision of the FMLA, which awards attorneys' fees in addition to "any judgment" for the plaintiff, may apply more broadly than similar provisions in other statutes that refer instead to "prevailing parties." *See Sherry*, 14 F. Supp. 2d at 1055, 1057; *McDonnell*, 968 F. Supp. at 293 (noting that "'any judgment' likely includes such limited and even Pyrrhic victories for a plaintiff that might fail to meet the Supreme Court's test of a 'prevailing party'"). Nevertheless, the plain wording of the statute provides some limit on this preference for awarding attorneys' fees to plaintiffs who prove that the defendant violated the FMLA. According to 29 U.S.C. § 2617(a)(3), an actual "judgment" in favor of the plaintiff is a necessary triggering event for an award of attorneys' fees under the FMLA. *Id.*; *see also Stomper v. Amalgamated Transit Union*, 27 F.3d 316, 318 (7th Cir. 1994) (holding that "the plaintiff must prevail by judgment in order to receive an award of attorneys' fees").

In this case, however, the district court did not enter judgment in favor of the plaintiff. Although the jury found that Ellis' termination of Mr. Franzen's employment had been in violation of the FMLA, the district court also found that Mr. Franzen had failed to prove that he was entitled to any damages. Accordingly, the court dismissed the case and entered judgment in favor of Ellis. Under the plain wording of section 2617, then, Mr. Franzen is not entitled to an award of attorneys' fees because no "judgment" was "awarded to the plaintiff." 29 U.S.C. § 2617(a)(3); *see also Stomper*, 27 F.3d at 318.

Despite the fact that the district court entered final judgment in favor of Ellis, Mr. Franzen contends that he nevertheless is entitled to attorneys' fees. In his view, the jury's verdict in his favor on the issue of liability is a sufficient "judgment" to warrant an award under section 2617(a)(3).[8] An interlocutory jury verdict on the

---

[8] In support, Mr. Franzen pieces together the language of some unrelated sources to suggest that the jury verdict here was a type of "interlocutory judgment" sufficient to satisfy Federal Rule of Civil Procedure 54(a)'s definition of "judgment," and, therefore, that this verdict is sufficient to satisfy the "any judgment" requirement of section 2617(a)(3). *See* Appellant's Br. at 10-11 (citing, inter alia, Fed. R. Civ. P. 56(c) & 58; *Syvock v. Milwaukee Boiler*, 665 F.2d 149, 165 (7th Cir. 1981); *Harris v. Goldblatt*, 659 F.2d 784, 786 (7th Cir. 1981)). These cases, however, involve only the appealability of interlocutory judgments—they do not discuss the meaning of "judgment" for the purpose of applying a fee-shifting provision in a statute.

Mr. Franzen also invites our attention to a paragraph from a prominent treatise on the subject; however, contrary to Mr. Franzen's inaccurate quotation, the cited source in fact suggests that attorneys' fees are available only when a plaintiff is awarded damages in an amount greater than zero. *Compare* Wright & Miller, Federal Practice & Procedure, § 2667 (3d ed. 2008) (noting that "when the jury finds for plaintiff as to liability, it has been held that plaintiff is the prevailing party and entitled to costs even though the jury determines that plaintiff has suffered *no more than nominal damages*" (emphasis added)), *with* Appellant's Br. at 11 (misquoting Wright & Miller to state that "when the jury finds for plaintiff as to

(continued...)

issue of liability alone, however, is insufficient to con-
stitute a judgment awarded to the plaintiff. *See
Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health &
Human Res.*, 532 U.S. 598, 604-05 (2001) (noting that an
"interlocutory ruling" is insufficient to establish a judg-
ment on which an award of attorneys' fees may be based
because it does not create a "material alteration of the
legal relationship of the parties"). As we noted in *Stomper*:

> "[I]n addition to any judgment awarded to the plain-
> tiff" implies a *favorable* judgment. Every case ends with
> a judgment of some kind; in this case the terminating
> order reads: "Judgment is entered dismissing this
> case with prejudice in light of the parties'
> settlement . . . ." So far as the merits go, plaintiffs not
> only did not prevail but also suffered dismissal of their
> complaint with prejudice. That is not a judgment
> "awarded to" the plaintiffs; it is a judgment suffered by
> the plaintiffs. If this were the sort of "judgment" to
> which fees may be added, even a judgment in defen-
> dants' favor after full deliberation would produce an
> award of fees to plaintiffs—for a judgment reading
> "Plaintiffs shall take nothing by their complaint" is
> still a judgment.

27 F.3d at 318-19 (emphasis in original). We continued:

---

[8] (...continued)
liability, it has been held that plaintiff is the prevailing party
and entitled to costs even though the jury determines that
plaintiff has suffered *no damages*." (emphasis added)).

*Delta Air Lines*[, *Inc. v. August*, 450 U.S. 346 (1981)] held that a complete lack of success did not require the offeree to pay the other side's costs. Only a *positive award* to the offeree permits cost shifting under Rule 68, the Court concluded, because only a decision favorable in some respect is a judgment "obtained by" the plaintiff. By a similar approach, only concrete relief is a "judgment awarded to the plaintiff" that permits fee shifting under § 201(c).

*Id.* at 319 (emphasis added); *see also Tunison v. Cont'l Airlines Corp.*, 162 F.3d 1187, 1190 (D.C. Cir. 1998) ("Unlike the award of nominal damages at issue in *Farrar*, a judgment with no damages at all is not an 'enforceable judgment'—there is simply nothing to enforce."); *PH Group Ltd. v. Birch*, 985 F.2d 649, 652 (1st Cir. 1993) ("[A]n award of zero damages, supported by a rational basis in the record, is generally considered a judgment for defendant.").

   Mr. Franzen also invites our attention to some district court cases, *see Stomper*, 27 F.3d at 318; *Rice v. Sunrise Express*, 237 F. Supp. 2d 962, 969 (N.D. Ind. 2002); *Sherry*, 14 F. Supp. 2d at 1057; *McDonnell*, 968 F. Supp. at 292, in which the court awarded attorneys' fees to the plaintiff under section 2617, even though the plaintiff received either minimal or nominal damages and therefore would not have been considered a "prevailing party" under most fee-shifting provisions. Each of these cases is readily distinguishable, however, as each involved an award of at least a nominal amount of damages to the plaintiff. Here, on the other hand, the court concluded

that Mr. Franzen had failed to prove that he was entitled to *any* damages, and it therefore entered judgment in favor of the defendant. As the district court remarked, "[t]he difference between this case and [those cases cited by the plaintiff] hinges on the difference between a judgment and a verdict . . . ." R.269 at 6. This type of interlocutory jury verdict, alone, is insufficient to establish a "judgment awarded to the plaintiff" on which an award of attorneys' fees under section 2617 may be based.

### Conclusion

For the reasons set forth above, we affirm the judgment of the district court.

AFFIRMED