# IN THE SUPREME COURT OF IOWA

No. 14–1386

Filed February 12, 2016

Amended April 22, 2016

**TINA ELIZABETH LEE,**

Appellee,

vs.

**STATE OF IOWA** and **POLK COUNTY CLERK OF COURT,**

Appellants.

Appeal from the Iowa District Court for Polk County, James M. Richardson, Judge.

The State and the Polk County Clerk of Court appeal a judgment awarding the plaintiff attorney fees. **REVERSED AND CASE REMANDED WITH INSTRUCTIONS.**

Thomas J. Miller, Attorney General, Jeffrey S. Thompson, Solicitor General, and Jeffrey C. Peterzalek and Meghan L. Gavin, Assistant Attorneys General, for appellants.

Paige Fiedler and Brooke Timmer of Fiedler & Timmer, P.L.L.C., Urbandale, for appellee.

**WIGGINS, Justice.**

An employee successfully obtained a judgment against her employer for prospective injunctive relief under the self-care provision of the Family Medical Leave Act (FMLA). The district court entered a judgment awarding the employee attorney fees and costs. The State appeals. We hold state sovereign immunity bars awards of attorney fees and costs incurred in seeking retroactive monetary relief in actions brought against state officials under *Ex parte Young*[1] to remedy violations of the self-care provision of the FMLA. However, we hold state sovereign immunity does not bar awards of attorney fees and costs incurred in seeking prospective relief in such actions. Thus, we reverse the district court judgment awarding the employee attorney fees and costs incurred in seeking both retroactive and prospective relief and remand the case to the district court with instructions to determine an appropriate award of attorney fees and costs in a manner consistent with the principles expressed in this opinion.

## I. Background Facts and Proceedings.

The Polk County Clerk of Court employed Tina Lee until November 2004, when the clerk terminated her employment with the state judicial branch after she took leave to treat her anxiety disorder. In January 2006, Lee filed suit against the State of Iowa and the Polk County Clerk of Court,[2] alleging violation of her statutory rights under the self-care provision of the FMLA found at 29 U.S.C. § 2612(a)(1)(D). The State

---

[1]In *Ex parte Young*, the Supreme Court held that states have no power to extend state sovereign immunity to state officials acting in their official capacities in suits seeking prospective relief from ongoing violations of federal law. 209 U.S. 123, 159–60, 167, 28 S. Ct. 441, 454, 457, 52 L. Ed. 714, 728–29, 732 (1908).

[2]Hereinafter collectively referred to as the State.

asserted the affirmative defense of state sovereign immunity. The district court denied summary judgment, finding Congress abrogated state sovereign immunity in enacting the self-care provision of the FMLA.

The jury rendered a verdict in favor of Lee on her claims of wrongful termination and retaliatory discharge in violation of the FMLA. In October 2007, the district court entered judgment in favor of Lee, awarding her money damages for the wrongful discharge, liquidated damages, reinstatement, and $78,844.21 in attorney fees and costs. The court also ordered the State to train its employees on FMLA compliance. The State filed a notice of appeal and moved to stay the judgment pending appeal without filing a supersedeas bond. Lee agreed to stay collection of the monetary judgment but resisted the motion to stay as to the reinstatement. The district court denied the motion as to the reinstatement, noting Lee would suffer substantial harm if the court further delayed her receipt of salary and benefits. Lee moved for an award of the attorney fees and costs she incurred in resisting the stay. The district court granted Lee's motion in March 2008, ordering the State to pay $8303.40 to cover the attorney fees and costs Lee incurred between October 2007 and February 2008.

The State then requested this court to stay the judgment pending the appeal. We granted the State's request and transferred the case to the court of appeals, which affirmed the district court. We granted the State's application for further review but held the case in abeyance pending the United States Supreme Court's decision in *Coleman v. Court of Appeals of Maryland*, ___ U.S. ___, 132 S. Ct. 1327, 182 L. Ed. 2d 296 (2012).

In considering the State's appeal, we determined the State preserved its sovereign immunity arguments but incorrectly identified

the Eleventh Amendment as the source of its sovereign immunity. *Lee v. State* (*Lee I*), 815 N.W.2d 731, 738–39 (Iowa 2012). After noting the Supreme Court held in *Coleman* that Congress failed to validly abrogate state sovereign immunity in passing the self-care provision of the FMLA under Section 5 of the Fourteenth Amendment, we proceeded to consider the other ground upon which the district court had denied the State's sovereign immunity defense. *Id.* at 739–43 (citing *Coleman,* ___ U.S. at ___, 132 S. Ct. at 1332–33, 1335, 182 L. Ed. 2d at 300–04). Though we determined the State had not constructively waived[3] state sovereign immunity, we noted state employees may nonetheless seek injunctive relief in suits against state officials responsible for violations of the self-care provision of the FMLA under *Ex parte Young.* *Id.* at 743. We concluded,

> In this case, the judgment entered by the district court was predicated on legal error. Accordingly, the noninjunctive relief granted in the judgment cannot stand, and we must reverse the district court. We remand the case to the district court to determine what relief granted in its judgment is still available to Lee within the framework of this lawsuit, findings of the jury at trial, and the cloak of immunity protecting the State. The district court shall permit the parties to be heard on this issue and enter a new final judgment for such relief.

*Id.* Accordingly, we reversed the judgment of the district court and remanded the case for determination of what relief was still available to Lee. *Id.*

On remand, Lee moved to enforce the October 2007 award of reinstatement, arguing in the alternative that the State had waived

---

[3]We declined to address whether the State had expressly waived its immunity because Lee had not presented that issue to the district court and the district court had not ruled upon it. *Lee I*, 815 N.W.2d at 740, 741–43.

sovereign immunity by stipulating it would pay her lost wages and benefits if the appellate court affirmed the reinstatement order on appeal when it moved to stay the judgment. *See Lee v. State* (*Lee II*), 844 N.W.2d 668, 673 (Iowa 2014). The State resisted, arguing Lee had not named any state official in her original action, challenging the characterization of lost wages and benefits as prospective relief, and arguing the State had not waived its immunity in seeking the stay because it agreed to pay lost wages and benefits only if the district court order was affirmed, rather than reversed, on appeal. *See id.* at 673.

In October 2012, the district court granted the motion, ordering the State to reinstate Lee and pay her lost wages and benefits from the date of the October 2007 judgment with postjudgment interest. The State appealed. In *Lee II*, we affirmed the district court and determined the date of the October 2007 reinstatement order was the date from which prospective relief should properly be determined. *Id.* at 684.

Thereafter, Lee learned the State did not intend to pay her attorney fees and costs and moved for attorney fees and costs in the district court. Specifically, she requested the court to order the State to pay the attorney fees and costs it awarded her in its October 2007 and March 2008 orders. She also sought an award of the attorney fees and costs she incurred during both appeals.

The district court concluded it was required to award Lee reasonable attorney fees and costs under 29 U.S.C. § 2617(a)(3) because she had been awarded relief in an FMLA action. Thus, on June 27, 2014, the court entered judgment ordering the State to pay Lee the attorney fees and costs it found she was entitled to in its October 2007 and March 2008 orders and $145,942.65 to cover the attorney fees and

costs she incurred between February 2008 and June 2014. The State appeals.

## II. Issues.

This appeal presents three issues for us to consider. First, we must determine the source of authority for the award of prospective relief to Lee. Second, we must determine whether state sovereign immunity bars an award of attorney fees and costs to Lee. Third, we must decide whether Lee is entitled to an award of attorney fees and costs under the FMLA.

## III. Scope of Review.

"We generally review decisions concerning attorney fees for an abuse of discretion . . . ." *Fennelly v. A-1 Mach. & Tool Co.*, 728 N.W.2d 181, 185 (Iowa 2007). However, when we review a ruling on a motion, the scope of our review depends on the grounds raised in the motion. *See, e.g., Clinton Physical Therapy Servs., P.C. v. John Deere Health Care, Inc.*, 714 N.W.2d 603, 609 (Iowa 2006). Whether a particular remedy is available under *Ex parte Young* is a question of law. *Lee II*, 844 N.W.2d at 674. Accordingly, we review the district court's decision to award attorney fees and costs in an *Ex parte Young* action for correction of errors at law. *See id.*

## IV. The Source of Authority for the Award of Prospective Relief to Lee.

The State alleges the source of authority for the award of prospective injunctive relief to Lee is unclear, but it acknowledges the source of authority for the award must be *Ex parte Young*, the FMLA, or both. Regardless of the source of authority for the award, however, the State contends it is not liable for attorney fees because Lee is not a

"prevailing party" under the FMLA and *Ex parte Young* cannot authorize an attorney fee award in Iowa.

We begin our discussion by clarifying the source of authority for awarding Lee prospective relief in her FMLA action brought under *Ex parte Young*. The district court concluded the FMLA authorized the prospective relief awarded to Lee.

The constitutional principle of state sovereign immunity reflects fundamental implications of our federal constitutional design and recognizes that inherent in the nature of sovereignty is some degree of immunity from suit. *Alden v. Maine*, 527 U.S. 706, 728–30, 119 S. Ct. 2240, 2254–55, 144 L. Ed. 2d 636, 662–63 (1999). Because the principle of state sovereign immunity reflects fundamental aspects of state sovereignty affirmed by, rather than originating from, the Eleventh Amendment, states may invoke sovereign immunity in both federal and state courts.[4] *Id.* at 713, 728–29, 754, 119 S. Ct. at 2246–47, 2254, 2266, 144 L. Ed. 2d at 652, 662, 678.

State sovereign immunity is not absolute. On the contrary, it is subject to several implicit limits or exceptions. *Id.* at 755–57, 119 S. Ct. at 2267–68, 144 L. Ed. 2d at 679–81; *Lee II*, 844 N.W.2d at 677

---

[4]The Eleventh Amendment to the United States Constitution provides "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. By its terms, the Eleventh Amendment limits only the exercise of federal judicial power, not the exercise of judicial powers by state courts. The Supreme Court occasionally uses the phrase "Eleventh Amendment immunity" as "convenient shorthand" for the broader constitutional principle known as state sovereign immunity or "the States' immunity from suit." *See Alden*, 527 U.S. at 713, 119 S. Ct. at 2246–47, 144 L. Ed. 2d at 652. The State now suggests the Tenth Amendment is the source of the immunity at issue in this case. However, the principle of state sovereign immunity predates the Constitution. *See Lee I*, 815 N.W.2d at 739 (quoting *Alden*, 527 U.S. at 713, 119 S. Ct. at 2246–47, 144 L. Ed. 2d at 652).

(acknowledging exceptions recognized in federal court also apply in state court). For example, "Congress may abrogate the States' immunity from suit pursuant to its powers under § 5 of the Fourteenth Amendment." *Coleman*, ___ U.S. at ___, 132 S. Ct. at 1333, 182 L. Ed. 2d at 301. States may expressly waive state sovereign immunity in federal and state court. *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675–76, 119 S. Ct. 2219, 2226, 144 L. Ed. 2d 605, 616 (1999). And states may constructively waive state sovereign immunity by impliedly consenting to suit under limited circumstances. *Lee I*, 815 N.W.2d at 741–42.

The *Ex parte Young* doctrine represents another exception to state sovereign immunity—one allowing federal and state courts to hear suits brought against state officials in their official capacities seeking prospective relief for violations of federal constitutional or statutory law. *Lee II*, 844 N.W.2d at 677–78. It is inaccurate to conceptualize prospective relief ordered in suits brought against state officials in their official capacities as authorized by or originating from *Ex parte Young*. Rather, invoking *Ex parte Young* permits the maintenance of suits alleging ongoing violations of federal constitutional or statutory law against state officials despite state sovereign immunity so long as they seek prospective relief. *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645, 122 S. Ct. 1753, 1760, 152 L. Ed. 2d 871, 882 (2002). In other words, the *Ex parte Young* doctrine serves as a means or mechanism for overcoming state sovereign immunity that allows a party to maintain a suit to enforce federal law against a state. Determining whether suit lies under *Ex parte Young* does not require analysis of the merits of the federal law claim for which a party seeks relief. *Id.* at 646, 122 S. Ct. at 1761, 152 L. Ed. 2d at 883. But the question of whether

the plaintiff is entitled to relief turns on the merits of the underlying federal law claim. *See Lee II*, 844 N.W.2d at 680.

Because the cloak of state sovereign immunity ordinarily protects state entities from suits by individuals, proof that an arm of the State violated the FMLA was insufficient standing alone to establish Lee's entitlement to relief. *See Lee I*, 815 N.W.2d at 743. Likewise, proof that the action met the basic requirements for invoking *Ex parte Young* was equally insufficient, standing alone, to establish Lee's entitlement to relief. *See Lee II*, 844 N.W.2d at 680. Consequently, in *Lee II* we stated Lee's reinstatement could appropriately be conceptualized "both as relief under the FMLA and as *Ex parte Young* relief." *Id.*

In the very same paragraph, however, we also explained Lee was "entitled to reinstatement *because* defendants violated the FMLA." *Id.* (emphasis added). We also acknowledged invoking *Ex parte Young* constitutes "a method of enforcing valid federal legislation, in this case the self-care provision of the FMLA." *Id.* Lee was entitled to maintain her suit seeking prospective relief because she satisfied the requirements for invoking the *Ex parte Young* exception to state sovereign immunity. *See id.* at 678–80. However, Lee was entitled to prospective relief because she proved the State violated the self-care provision of the FMLA. *Id.* at 671, 680.

**V. Whether State Sovereign Immunity Bars An Award of Attorney Fees and Costs to Lee.**

The Supreme Court has often considered the propriety of awarding attorney fees in the context of actions against states maintained under *Ex parte Young*, but the Court has not considered the propriety of awarding attorney fees in the context of an action brought under the self-care provision of the FMLA. The first major case addressing attorney fees

in the *Ex parte Young* context was *Hutto v. Finney*, 437 U.S. 678, 98 S. Ct. 2565, 57 L. Ed. 2d 522 (1978). In *Hutto*, the Court affirmed two attorney fee awards in an *Ex parte Young* action brought under 42 U.S.C. § 1983 to enforce constitutional rights. *Id.* at 680, 700, 98 S. Ct. at 2568, 2578, 57 L. Ed. 2d at 528, 540.

The *Hutto* Court first affirmed a district court award of attorney fees pursuant to an express finding that state officers acted in bad faith by failing to cure unconstitutional conditions of confinement in state prisons. *Id.* at 684–85, 689–92, 98 S. Ct. at 2570, 2572–74, 57 L. Ed. 2d at 530–31, 533–35. The Court reasoned the "power to impose a fine is properly treated as ancillary to the federal court's power to impose injunctive relief." *Id.* at 691, 98 S. Ct. at 2574, 57 L. Ed. 2d at 534. Thus, the Court declined to distinguish between attorney fees imposed for bad faith and "any other penalty imposed to enforce a prospective injunction." *Id.* at 691–92, 98 S. Ct. at 2574, 57 L. Ed. 2d at 534–35.

The *Hutto* Court also affirmed an appellate award of attorney fees based on 42 U.S.C. § 1988, a fee-shifting statute authorizing courts to award attorney fees to prevailing parties "as part of the costs" in actions brought to enforce select federal statutes, including § 1983. *Id.* at 693–700, 98 S. Ct. at 2574–78, 57 L. Ed. 2d at 536–40 (quoting 42 U.S.C. § 1988 (1976)).[5] In affirming this award, the Court relied on the fact that courts have traditionally imposed awards of costs against states without regard to state sovereign immunity. *Id.* at 695, 98 S. Ct. at 2576, 57 L. Ed. 2d at 537. The Court also concluded awarding costs against states does not "seriously strain" the distinction between forbidden

---

[5]In relevant part, § 1988 authorized discretionary awards to "prevailing parties" in "any action or proceeding to enforce" specified statutes of "a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988 (1976).

retroactive relief and permitted prospective relief. In doing so, the Court stated,

> Unlike ordinary "retroactive" relief such as damages or restitution, an award of costs does not compensate the plaintiff for the injury that first brought him into court. Instead, the award reimburses him for a portion of the expenses he incurred in seeking prospective relief.

*Id.* n.24. Consequently, the Court held that Congress may authorize awards of attorney fees as part of litigation costs without expressly stating it intends to abrogate state sovereign immunity. *Id.* at 696–97, 98 S. Ct. at 2576–77, 57 L. Ed. 2d at 538.

Two years after *Hutto,* the Court held both federal and state courts may award attorney fees authorized by § 1988 against states in actions brought under *Ex parte Young* despite state sovereign immunity.[6] *Maine v. Thiboutot,* 448 U.S. 1, 9–11, 9 n.7, 10 n.11, 11 n.12, 100 S. Ct. 2502, 2507–08, 2507 nn.7 & 11, 2508 n.12, 65 L. Ed. 2d 555, 562–63, 562 n.7, 563 nn.11 & 12 (1980).[7] That same day, the Court declined to decide whether federal courts may award attorney fees in actions brought under *Ex parte Young* to vindicate statutes not enacted pursuant to Section 5 of the Fourteenth Amendment. *Maher v. Gagne,* 448 U.S. 122, 130, 100 S. Ct. 2570, 2575, 65 L. Ed. 2d 653, 661–62 (1980).

The Court revisited the subject of awarding attorney fees in actions brought against state officials under *Ex parte Young* in *Missouri v.*

---

[6]For clarity, this summary references "sovereign immunity" or "state sovereign immunity" rather than "Eleventh Amendment immunity" in discussing these precedents. This is consistent with the Court's subsequent explanation of what it means by the phrase "Eleventh Amendment immunity" in *Alden. See Lee I,* 815 N.W.2d at 738–39 (quoting *Alden,* 527 U.S. at 713, 119 S. Ct. at 2246–47, 144 L.Ed.2d at 652).

[7]Courts may not award attorney fees in actions against state officers in their personal capacities, however. *Kentucky v. Graham,* 473 U.S. 159, 170–71, 105 S. Ct. 3099, 3108, 87 L. Ed. 2d 114, 124–25 (1985).

*Jenkins,* 491 U.S. 274, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989). Specifically, the Court considered whether states may be ordered to pay attorney fees "enhanced to compensate for delay in payment" despite state sovereign immunity. *Id.* at 278, 109 S. Ct. at 2466, 105 L. Ed. 2d at 236. Once again, the fees at issue had been awarded by the district court pursuant to § 1988. *Id.* at 275, 109 S. Ct. at 2465, 105 L. Ed. 2d at 235. The Court reaffirmed sovereign immunity "has no application to an award of attorney's fees, ancillary to a grant of prospective relief, against a State." *Id.* at 280, 284, 109 S. Ct. at 2467, 2469, 105 L. Ed. 2d at 238, 240. The Court thus held state sovereign immunity does not bar an award of fees including "an enhancement for delay." *Id.* at 284, 109 S. Ct. at 2469, 105 L. Ed. 2d at 240.

According to the *Jenkins* Court, following *Hutto,* "it must be accepted as settled that an award of attorney's fees ancillary to prospective relief is not subject to the strictures of [state sovereign immunity]." *Id.* at 279, 109 S. Ct. at 2467, 105 L. Ed. 2d at 237. The Court reasoned that the distinction between "retroactive monetary relief" and "prospective injunctive relief" drawn in its prior cases supported a broad reading of *Hutto. Id.* at 278, 109 S. Ct. at 2466, 105 L. Ed. 2d at 237 (citing *Edelman v. Jordan,* 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974); *Ex parte Young,* 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908)). Attorney fees belong to the prospective category, the Court explained, because fees incurred while seeking prospective relief constitute reimbursement for litigation expenses rather than retroactive liability for prelitigation conduct. *Id.* Moreover, the Court reaffirmed that the propriety of subjecting states to fee-shifting statutes does not depend on congressional abrogation of state sovereign immunity pursuant to

Section 5 of the Fourteenth Amendment. *Id.* at 279–80, 109 S. Ct. at 2467, 105 L. Ed. 2d at 237–38.

Our research has uncovered no published federal or state case reviewing a district court award of fees in a similar FMLA action. However, for the following reasons, we conclude courts may award attorney fees and costs in actions to enforce the self-care provision of the FMLA maintained under *Ex parte Young.*

First, the Supreme Court has repeatedly emphasized the propriety of ordering states to pay attorney fees does not depend on congressional abrogation of state sovereign immunity. *Id.*; *Hutto,* 437 U.S. at 696–97, 98 S. Ct. at 2576–77, 57 L. Ed. 2d at 538. Consequently, no decision by the Supreme Court addressing the scope of congressional power to abrogate state sovereign immunity dictates the outcome of our inquiry here. *See Coleman,* ___ U.S. at ___, 132 S. Ct. at 1338, 182 L. Ed. 2d at 307 ("To abrogate the States' immunity from suits for damages under § 5, Congress must identify a pattern of constitutional violations and tailor a remedy congruent and proportional to the documented violations. It failed to do so when it allowed employees to sue States for violations of the FMLA's self-care provision."); *see also Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 65–66, 72–73, 116 S. Ct. 1114, 1128, 1131–32, 134 L. Ed. 2d 252, 272–73, 276–77 (1996) (holding congressional power to abrogate state sovereign immunity does not extend to Article I legislation and noting that power has historically been limited to legislation enacted pursuant to Sections 1 and 5 of the Fourteenth Amendment). The Court has repeatedly considered yet declined to countenance the argument that states may be ordered to pay attorney fees only in actions brought to enforce Section 5 legislation. *Jenkins,* 491 U.S. at 279–80, 109 S. Ct. at

2467, 105 L. Ed. 2d at 237–38; *Maher*, 448 U.S. at 130, 100 S. Ct. at 2575, 65 L. Ed. 2d at 661–62.

Second, as the Supreme Court has acknowledged, awarding costs in actions against state officials honors the prohibition against awarding retroactive monetary relief established in *Ex parte Young*. *See Jenkins*, 491 U.S. at 278, 109 S. Ct. at 2466, 105 L. Ed. 2d at 236–37; *Hutto*, 437 U.S. at 695 n.24, 98 S. Ct. at 2576 n.24, 57 L. Ed. 2d at 537 n.24. Significantly, the Court has characterized attorney fees as being "ancillary to prospective relief." *Jenkins*, 491 U.S. at 278–79, 109 S. Ct. at 2466–67, 105 L. Ed. 2d at 236–37; *see Hutto*, 437 U.S. at 691, 98 S. Ct. at 2574, 57 L. Ed. 2d at 534. This label invokes the Court's discussion of the nature of relief barred by sovereign immunity in *Edelman v. Jordan*, 415 U.S. at 667–68, 94 S. Ct. at 1357–58, 39 L. Ed. 2d at 675. In *Edelman*, the Court acknowledged that the difference between relief permitted under *Ex parte Young* and relief barred by sovereign immunity "will not in many instances be that between day and night" but clarified that "an ancillary effect on the state treasury is a permissible and often an inevitable consequence" of awarding prospective relief. *Id.*

The *Edelman* Court did not articulate precisely what constitutes a permissible "ancillary effect on the state treasury." *See id.* However, *Edelman* made clear that fiscal consequences to states that are "the necessary result of compliance with decrees which by their terms were prospective in nature" constitute permissible ancillary effects. *Id.*

*Edelman* initially "created considerable doubt as to the power of federal courts to order fee awards to be paid with state funds" because an award of attorney fees does not constitute necessary results of compliance with a prospective decree. Note, *Attorneys' Fees and the*

*Eleventh Amendment,* 88 Harv. L. Rev. 1875, 1876, 1894–95 (1975). However, a note published in the Harvard Law Review the following year argued attorney fee awards are distinguishable from retroactive damages. The note stated,

> First, [attorneys' fees] do not compensate for injuries sustained by the plaintiff, but rather reimburse expenses incurred in the process of obtaining a remedy. Indeed, attorneys' fees may be awarded in cases in which injury, while threatened, has not yet occurred. Second, because the basic purpose of these awards is to induce litigants to vindicate the public interest, rather than to compensate the victims of unlawful state action, fee awards are properly not measured solely in terms of the time and money expended in winning the suit. While the market value of the services rendered by the lawyer may be the prime factor in evaluating the size of the fee award, the impact of the case on the law and on the lives of private citizens may also be taken into account. And even if attorneys' fees are regarded as compensation for prior losses, these losses arise in the course of obtaining prospective relief and hence, unlike damages, may be characterized as a financial burden created by the process of adjusting future state policy to the demands of federal law.

*Id.* at 1895–96 (footnotes omitted). Within a few years after the note's publication, the Court acknowledged attorney fee awards "do not seriously strain" the distinction between prospective and retroactive relief because they reimburse expenses the plaintiff incurred in seeking prospective relief rather than compensate the plaintiff for preexisting injury. *Hutto,* 437 at 695 n.24, 98 S. Ct. at 2576 n.24, 57 L. Ed. 2d at 537 n.24.[8]

Moreover, attorney fees are often "ancillary" to prospective relief because they are necessary to vindicate federal rights. T. Haller Jackson

---

[8]Notably, the *Hutto* Court cited the note for an unrelated proposition. *See Hutto,* 437 U.S. at 691 n.16, 98 S. Ct. at 2573–74 n.16, 57 L. Ed. 2d at 534 n.16 (acknowledging that "principles of federalism . . . surely do not require federal courts to enforce their decrees only by sending high state officials to jail").

IV, *Fee Shifting and Sovereign Immunity After* Seminole Tribe, 88 Neb. L. Rev. 1, 37–38 (2009) [hereinafter Jackson]. The "private attorney general rationale"[9] for attorney fee awards implicitly acknowledges the availability of attorney fees is often "crucial to the practical ability to bring suit." *See id.* at 11, 37–38. Conceptualizing attorney fee awards as "ancillary" to prospective relief in the sense that they serve "as a means of achieving future compliance with federal law" honors the forward-looking thrust of the prospective–retroactive distinction. *See* Note, 88 Harv. L. Rev. at 1893–95. This conclusion is consistent with the Supreme Court's express acknowledgement that awarding relief in *Ex parte Young* actions strikes a balance between states' sovereignty interests and the countervailing federal interest in maintaining the supremacy of federal law. As the Court has acknowledged,

> Both prospective and retrospective relief implicate Eleventh Amendment concerns, but the availability of prospective relief of the sort awarded in *Ex parte Young* gives life to the Supremacy Clause. Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law.

*Green v. Mansour*, 474 U.S. 64, 68, 106 S. Ct. 423, 426, 88 L. Ed. 2d 371, 377 (1985). The interests advanced by attorney fee awards are distinguishable from the compensatory and deterrence interests that are insufficient to overcome state sovereign immunity. *See id.*

Third, the FMLA fee provision requires courts to award attorney fees as part of costs. The provision mandates an award of both "reasonable attorney's fees . . . and *other* costs of the action" to prevailing

---

[9]As the Supreme Court has acknowledged, Congress often enacts fee-shifting statutes "to encourage private litigation" and use "private enforcement to implement public policy." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 263, 95 S. Ct. 1612, 1624, 44 L. Ed. 2d 141, 156 (1975).

plaintiffs. 29 U.S.C. § 2617(a)(3) (2000) (emphasis added). Historically, courts have permitted the imposition of costs against states despite state sovereign immunity. *Hutto*, 437 U.S. at 695, 98 S. Ct. at 2576, 57 L. Ed. 2d at 537. The Supreme Court has repeatedly invoked this historical rationale in holding that attorney fees awarded pursuant to statutes imposing attorney fees as costs were not barred by sovereign immunity. Jackson, 88 Neb. L. Rev. at 40 (noting the Court reached for a historical basis to uphold fee awards in *Jenkins*, *Hutto*, and *Maher*). Moreover, that rationale applies with equal force to every statute authorizing an attorney fee award as part of costs, regardless of Congress's constitutional basis for enacting it.

Lastly, the State argues no court has awarded attorney fees against a state under a federal statute other than 42 U.S.C. § 1988 in an action brought under *Ex parte Young*. We disagree. As the Sixth Circuit has observed, it is well-settled that an award of attorney fees ancillary to prospective relief is not barred by state sovereign immunity. *Uttilla v. Tenn. Highway Dep't*, No. 99–5629, 2000 WL 245476, at *2 (6th Cir. Feb. 23, 2000) (per curiam) (affirming a district court's denial of summary judgment in the context of an action brought under the Americans with Disabilities Act of 1990). Because attorney fees constitute reimbursement of expenses incurred in seeking prospective relief, not retroactive liability for prelitigation conduct, courts may award them under *Ex parte Young*. *Espinoza v. Tex. Dep't of Pub. Safety*, No. CIV.A.3:00–CV–1975–L, 2002 WL 31191347, at *5 (N.D. Tex. Sept. 30, 2002), (rejecting the argument that only injunctive relief is permitted under *Ex parte Young* in the context of an action brought under the Americans with Disabilities Act of 1990 and the Rehabilitation Act of 1973), *aff'd per curiam*, 148 F. App'x 224 (5th Cir. 2005); *see also Class*

*v. Norton*, 505 F.2d 123, 127 (2d Cir. 1974) (upholding an award of attorney fees in an action brought under the Social Security Act). As reflected in recent unpublished decisions, courts generally assume attorney fees may be awarded in FMLA actions brought under *Ex parte Young. See, e.g., Kurtzman v. Univ. of Cincinnati*, No. 1:09–CV–580–HJW, 2012 WL 1805486, at *7 (S.D. Ohio May 17, 2012) (adopting a recommendation to deny summary judgment on an FMLA claim brought under *Ex Parte Young* to the extent the plaintiff sought "prospective injunctive relief, i.e. reinstatement and attorney fees"); *Shaw v. Tenn. Dep't of Transp.*, No. 3:12–0247, 2012 WL 4191244, at *1 (M.D. Tenn. May 8, 2012), (recommending denial of a motion to dismiss an FMLA claim brought under *Ex parte Young* to the extent the plaintiff sought "injunctive relief, including but not limited to reinstatement or equitable relief, attorney's fees and costs"), *adopted by* 2012 WL 4175011 (M.D. Tenn. Sept. 18, 2012). *But see Smith v. Grady*, 960 F. Supp. 2d 735, 756 (S.D. Ohio 2013) (apparently assuming an award of attorney fees would constitute retroactive relief prohibited by sovereign immunity).

Accordingly, we conclude state sovereign immunity did not bar the district court from awarding Lee attorney fees and costs she incurred in seeking prospective relief to remedy violations of the self-care provision of the FMLA in her action against state officials under *Ex parte Young*.

**VI. Whether Lee is Entitled to an Award of Attorney Fees and Costs Under the FMLA.**

The FMLA fee provision provides that courts shall award reasonable attorney fees and costs to plaintiffs awarded any judgment in an FMLA action. 29 U.S.C. § 2617(a)(3). Federal courts interpreting the FMLA acknowledge its fee provision makes awarding attorney fees mandatory rather than discretionary. *See, e.g., Franzen v. Ellis Corp.*,

543 F.3d 420, 430 (7th Cir. 2008) ("Unlike most other statutory fee-shifting provisions, section 2617 *requires* an award of attorneys' fees to the plaintiff when applicable.").

Legislative history and related caselaw confirm the FMLA requires courts to award reasonable attorney fees to prevailing plaintiffs. Both houses of Congress clearly contemplated courts would have no discretion to deny attorney fees to a prevailing plaintiff under § 2617 and would retain discretion only as to the amount of fees awarded. S. Rep. No. 103-3, at 36 (1993), *reprinted in* 1993 U.S.C.C.A.N. 3, 38; H.R. Rep. No. 103-8, pt. 1, at 47–48 (1993). In addition, Congress intended courts to interpret the FMLA fee provision in the same manner they interpret the fee provision of the Fair Labor Standards Act (FLSA) of 1938, 29 U.S.C. § 216(b). S. Rep. No. 103-3, at 36; H.R. Rep. No. 103-8, pt. 1, at 47–48. Like the FLSA fee provision, the FMLA fee provision instructs that courts shall award attorney fees in addition to any judgment awarded to the plaintiff. *Compare* 29 U.S.C. § 216(b), *with id.* § 2617(a)(3). As we have previously acknowledged, the FLSA fee provision "*mandates* an award of reasonable attorney fees and costs to the prevailing party." *Dutcher v. Randall Foods*, 546 N.W.2d 889, 895 (Iowa 1996). Under that provision, only the reasonableness of the amount of fees awarded is left to the district court's broad discretion. *Id.*

Consequently, we conclude the FMLA fee provision requires an award of attorney fees and costs to any plaintiff awarded any judgment in an FMLA action. It contains no exception prohibiting fee awards to defendants who happen to be states. On the contrary, the FMLA defines employers who may be defendants to include public agencies, including states. *See* 29 U.S.C. § 2611(4)(A)(iii) (defining "employer" to include

public agencies); *see also id.* § 203(x) (defining "public agency" to include states or state agencies).

We now turn to the question of whether the district court awarded Lee any judgment in her FMLA action. The State argues 29 U.S.C. § 2617(a)(3) does not permit an award of attorney fees to Lee because it applies only when the plaintiff is a prevailing party. The State further argues it is impossible to conclude Lee prevailed either in the district court or in her first appeal. In response, Lee argues the prevailing-party standard does not apply under the FMLA. Alternatively, she argues that even if the prevailing-party standard applies, under that standard the court determines whether a party has prevailed based on the outcome of the case as a whole.

We agree with Lee that the standard that applies under the FMLA fee provision is distinguishable from the standard that applies under fee provisions authorizing discretionary awards of fees to prevailing parties. First, unlike the FMLA fee provision, most other congressionally enacted fee provisions employ the word "may" rather than the word "shall." *McDonnell v. Miller Oil Co.,* 968 F. Supp. 288, 292 (E.D. Va. 1997). Courts usually hold that fee provisions using the word "may" place the decision about whether to award *any* attorney fees within the sound discretion of the district court. *See id.* In contrast, because the FMLA fee provision employs the word "shall" instead of the word "may," it *requires* the district court to award attorney fees to any plaintiff awarded any judgment in an FMLA action. *See id.*

Second, whereas most fee-shifting provisions permit discretionary fee awards to the prevailing party, the FMLA fee provision mandates fee awards only to prevailing plaintiffs. *Id.* at 293. Thus, the FMLA fee

provision is unilateral rather than bilateral in scope, as only plaintiffs in FMLA actions are eligible to receive attorney fee awards. *Id.*

Third, whereas fee provisions authorizing discretionary fee awards to prevailing parties authorize attorney fee awards under a broad range of circumstances, the FMLA fee provision does not. Typically, courts generously construe statutes authorizing an award of fees to a prevailing party. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 & n.7, 103 S. Ct. 1933, 1939 & n.7, 76 L. Ed. 2d 40, 50 & n.7 (1983). In fact, because "the prevailing party inquiry does not turn on the magnitude of the relief obtained," even an award of nominal damages confers eligibility to receive an attorney fee award under that standard. *Farrar v. Hobby*, 506 U.S. 103, 113–14, 113 S. Ct. 566, 574, 121 L. Ed. 2d 494, 505 (1992). "In short, a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.* at 111–12, 113 S. Ct. at 573, 121 L. Ed. 2d at 503. A claim materially alters the legal relationship between the parties once "the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant." *See id.* at 113, 113 S. Ct. at 574, 121 L. Ed. 2d at 504. In contrast, the FMLA fee provision plainly applies only once a court has awarded a *judgment* under the FMLA and does not authorize attorney fee awards pursuant to consent decrees or settlements. *See* 29 U.S.C. § 2617.

Consequently, we must determine whether Lee met the statutory prerequisite for an award of attorney fees based on her FMLA claim—a judgment in her favor on that claim. If so, the district court was obligated to award Lee attorney fees and costs, and its discretion was limited to the amount of the award. *See id.*

The FMLA does not define the term judgment. *See id.* § 2611. Generally, the term "judgment" refers to a "final determination of the rights and obligations of the parties in a case." *Judgment*, Black's Law Dictionary (10th ed. 2014); *cf.* Iowa R. Civ. P. 1.951 ("Every final adjudication of any of the rights of the parties in an action is a judgment."). Applying recognized conflict-of-law principles, however, we conclude that in order to determine whether the district court order awarding prospective relief to Lee constitutes a judgment in her favor for purposes of the FMLA fee provision, we must determine whether it constitutes a valid judgment by applying state law. *See* Restatement (Second) of Conflict of Laws § 92 & cmt. *c*, at 272–73 (1971) [hereinafter Restatement (Second)] ("A judgment, to be valid . . . , must be in force in the state where the judgment was rendered.").

At the conclusion of *Lee I*, we remanded this case to the district court "to determine what relief granted in its judgment" was still available to Lee under *Ex parte Young*. *Lee I*, 815 N.W.2d at 743. The State argues Lee is not entitled to attorney fees under the FMLA because this court wholly reversed the district court judgment in *Lee I*. It further argues our holding in *Lee II* that the date of the October 2007 order is the date from which prospective relief should be determined is irrelevant to the question presented in this appeal. We disagree.

The State now makes essentially the same argument it made in *Lee II* when it contended *Lee I* reversed the October 2007 order in its entirety. *Lee II*, 844 N.W.2d at 681. Critically, we specifically rejected the notion that the 2007 judgment had no impact on the rights and obligations of the parties in *Lee II*:

> [The State's] arguments rest on a flawed premise—that we did not uphold the reinstatement remedy in *Lee I*. [The

State is] technically correct that *Lee I* did not "affirm" the district court's 2007 judgment. Our decision stated that it reversed the judgment of the district court and remanded the case for further proceedings, ordering the district court to "enter a new final judgment." But, we agree with the district court's interpretation of our remand: "None of the trial court's holdings regarding equitable relief were specifically overruled, and as law of the case, they must still be enforced." We specifically held only the "noninjunctive relief granted in the judgment cannot stand." We limited the district court's task on remand to "determin[ing] what relief *granted in its judgment* is *still available* to Lee within the framework of this lawsuit, findings of the jury at trial, and the cloak of immunity protecting the State." The district court was therefore responsible only for categorizing the elements of the 2007 order as injunctive or noninjunctive. In "the framework of this lawsuit," the district court's 2012 ruling correctly concluded the 2007 reinstatement order is relief granted in that judgment that is still available to Lee.

*Id.* at 681–82 (final alteration in original) (citations omitted) (quoting *Lee I*, 815 N.W.2d at 743). We therefore upheld the 2012 order awarding Lee lost wages and benefits from the date of the 2007 order because we determined "the 2007 order imposed *prospective injunctive relief* from defendants' violation of the FMLA, creating an obligation to reinstate Lee." *Lee II*, 844 N.W.2d at 682.

"It is a familiar legal principle that an appellate decision becomes the law of the case and is controlling on both the trial court and on any further appeals in the same case." *United Fire & Cas. Co. v. Iowa Dist. Ct.*, 612 N.W.2d 101, 103 (Iowa 2000). When the law-of-the-case doctrine applies, "the legal principles announced and the views expressed by a reviewing court in an opinion, right or wrong, are binding throughout further progress of the case." *State v. Ragland*, 812 N.W.2d 654, 658 (Iowa 2012) (quoting *State v. Grosvenor*, 402 N.W.2d 402, 405 (Iowa 1987)). The doctrine generally applies only to issues raised and passed on in a prior appeal. *Cawthorn v. Catholic Health Initiatives Iowa*

*Corp.*, 806 N.W.2d 282, 286–87 (Iowa 2011); *Bahl v. City of Asbury*, 725 N.W.2d 317, 321 (Iowa 2006). However, the doctrine extends to "matters necessarily involved in the determination of a question" settled in a prior appeal for purposes of subsequent appeals. *In re Lone Tree Cmty. Sch. Dist.,* 159 N.W.2d 522, 526 (Iowa 1968) (quoting *Des Moines Bank & Trust Co. v. Iowa S. Utilities Co. of Del.*, 245 Iowa 186, 189, 61 N.W.2d 724, 726 (1953)).

Just as the matters decided in *Lee I* controlled as the law of the case in *Lee II*, those matters decided in both *Lee I* and *Lee II* control in the appeal before us. In *Lee II,* we determined *Lee I* established the equitable relief included in the district court judgment had never been specifically overruled and therefore remained enforceable as the law of the case. *Lee II*, 844 N.W.2d at 681. In holding Lee was entitled to prospective injunctive relief under *Ex parte Young* from the date of the 2007 order forward, we necessarily determined the 2007 order created an obligation to reinstate Lee that remained in force.[10] *Id.* at 681–82, 684.

Of course, reversal on the merits can change a prevailing plaintiff into a nonprevailing plaintiff. *See Jenkins v. Missouri,* 127 F.3d 709, 714 (8th Cir. 1997). Under the prevailing-party standard, when the holding on appeal does not affect the district court finding that the defendant violated the law or the defendant's obligation to remedy such violations, the outcome on appeal does not retroactively take away the status of a

---

[10]In *Lee II*, we also held that the State waived its sovereign immunity by making assurances to this court in order to obtain a stay of the reinstatement. *Lee II*, 844 N.W.2d at 683. This holding, standing alone, would have been insufficient to afford Lee relief to the date of the 2007 order had the equitable relief contained therein not remained in force. But we expressly held that Lee was entitled to prospective relief from the date of the 2007 order "under *Ex parte Young*." *Id.* at 684. The question of whether the *Ex parte Young* exception to state sovereign immunity applies is distinct from the question of whether the consent or waiver exception applies.

plaintiff as the prevailing party in the underlying action. *Id.* Thus, we agree with Lee that "status as a prevailing party is determined on the outcome of the case as a whole, rather than by piecemeal assessment of how a party fares . . . along the way." *Id.* (interpreting *Comm'r, INS v. Jean*, 496 U.S. 154, 161–62, 110 S. Ct. 2316, 2320, 110 L. Ed. 2d 134, 144 (1990)); *see also Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791, 109 S. Ct. 1486, 1493, 103 L. Ed. 2d 866, 876 (1989) (stating a prevailing party is "one who has succeeded on any significant claim affording it some of the relief sought, either *pendente lite* or at the conclusion of the litigation"). In other words, a party is a prevailing party entitled to attorney fees so long as it won the war, even if it lost a battle or two along the way.

Moreover, we find the same holds true when the FMLA standard applies. Notably, appellate courts do not enter judgments on appeal. *State v. Effler*, 769 N.W.2d 880, 883 (Iowa 2009). Rather, when a different party prevails on appeal than prevailed in the district court, this court or the court of appeals remands the case to the district court for entry of a judgment in his or her favor. *See id.*

Applying these principles to the circumstances before us, we conclude the district court was correct that it was required to award Lee attorney fees and costs under the FMLA. *See* 29 U.S.C. § 2617(a)(3). We necessarily determined in *Lee II* that the 2007 order constituted a valid judgment awarded to Lee that remained in force. *See Lee II*, 844 N.W.2d at 681–82; *see also* Restatement (Second) § 92 & cmt. *c*, at 272–73; *Judgment,* Black's Law Dictionary. As the law of the case, that determination controlled here as to whether Lee qualifies for attorney fees and costs under the FMLA.

**VII.  Did the District Court Correctly Determine the Amount of the Attorney Fee and Costs Award?**

Because the FMLA mandates an award of reasonable attorney fees and costs to the prevailing plaintiff, only the amount of attorney fees awarded is within the district court's discretion.  *Dotson v. Pfizer, Inc.,* 558 F.3d 284, 303 (4th Cir. 2009); *see Dutcher,* 546 N.W.2d at 895 (discussing the scope of district court discretion in the context of mandatory fee awards under the FLSA).  When a party challenges the reasonableness of an award of attorney fees and costs, we ordinarily review the amount of the award for an abuse of discretion.  *Equity Control Assocs., Ltd. v. Root,* 638 N.W.2d 664, 674 (Iowa 2001).  In this case, the State did not contest the reasonableness of the attorney fees and costs before the district court, nor did the court address this issue in its ruling.  Consequently, the State has not preserved this issue for our review.  *See Meier v. Senecaut,* 641 N.W.2d 532, 537 (Iowa 2002).

However, the State challenges the amount of the fees awarded on another ground.  Specifically, the State argues state sovereign immunity bars any award of attorney fees and costs to Lee in this action.  As we already decided, state sovereign immunity does not prevent courts from awarding attorney fees and costs incurred in seeking prospective relief in actions brought against state officials under *Ex parte Young* to remedy violations of the self-care provision of the FMLA.  Nonetheless, when the district court ordered the state to pay attorney fees and costs, it did not analyze the documentation Lee submitted to determine whether each item of fees and costs she claimed was incurred in seeking retroactive monetary relief, prospective relief, or both retroactive and prospective relief.

It is evident the district court awarded Lee attorney fees she incurred in seeking both retroactive and prospective relief.  In its October

2007 order, the court made findings to support the reasonableness of the fee award. The court found Lee's counsel spent a reasonable amount of time on each task performed and provided proper documentation as to the reasonableness of the hourly rates charged by the attorneys who performed those tasks. The court emphasized Lee obtained not only a jury verdict in her favor on both her wrongful discharge and retaliation claims, but also an order that the State comply with the law and train its employees on FMLA compliance. Because the court found Lee to be a highly successful plaintiff, it awarded her all the attorney fees she requested. However, the court never addressed whether any portion of the attorney fees and costs Lee requested related solely to her claims for retroactive monetary relief.

The documentation Lee submitted to the district court reveals a portion of the attorney fees the court awarded Lee was specific to her claims for retroactive monetary relief. For example, Lee requested attorney fees her counsel charged for calculating her lost wages and bringing her claim for liquidated damages. Lee acted appropriately when she requested these fees, as she believed she was entitled to both retroactive and prospective relief at the time because the court had denied the State's claim of sovereign immunity on abrogation grounds. The Supreme Court subsequently decided Congress did not abrogate state sovereign immunity in enacting the self-care provision of the FMLA, and we reversed the district court judgment on appeal as to the noninjunctive relief granted to Lee because the district court had based its decision to award that relief on legal error. *Lee I*, 815 N.W.2d at 740, 743.

In its most recent order awarding attorney fees and costs, the district court reaffirmed the awards of fees and costs in its October 2007

and March 2008 orders and awarded additional attorney fees and costs. Because we find state sovereign immunity barred the district court from awarding Lee attorney fees and costs she incurred in seeking retroactive monetary relief, we must reverse the district court order of June 27, 2014, and remand the case for the court to award Lee reasonable attorney fees and costs she incurred in seeking prospective relief.

In determining an appropriate fee award in this case, the district court should consider the general principles governing attorney fee awards in actions in which plaintiffs are only partially successful. Thus, to the extent Lee's unsuccessful claims for retroactive relief were unrelated to her successful claims for prospective relief, the court may not award fees or costs she obviously incurred in pursuing only the unsuccessful claims. *See Hensley*, 461 U.S. at 434–35, 440, 103 S. Ct. at 1940, 1943, 76 L. Ed. 2d at 51–52, 54–55. But to the extent counsel devoted time "generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis," the court may "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435, 103 S. Ct. at 1940, 76 L. Ed. 2d at 51–52. The court may properly award any fees incurred in the litigation involving "a common core of facts" or "based on related legal theories." *See id.* at 435, 103 S. Ct. at 1940, 76 L. Ed. 2d at 51; *see also Marez v. Saint-Gobain Containers, Inc.*, 688 F.3d 958, 965 (8th Cir. 2012); *Lynch v. City of Des Moines*, 464 N.W.2d 236, 239 (Iowa 1990); *Landals v. George A. Rolfes Co.*, 454 N.W.2d 891, 897 (Iowa 1990). Nevertheless, the court ultimately must consider the reasonableness of the hours expended on the litigation as a whole in light of the degree of success actually obtained. *Hensley*, 461 U.S. at 436, 103 S. Ct. at 1941, 76 L. Ed. 2d at 52.

As the Supreme Court has explained with respect to awarding attorney fees and expenses to a partially successful party,

> The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the "results obtained." This factor is particularly crucial where a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief. In this situation two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

*Id.* at 434, 103 S. Ct. at 1940, 76 L. Ed. 2d at 51 (footnote omitted). On remand, the district court may consider not only the significance of the success obtained to Lee personally, but also the degree to which her core claim served to vindicate the public interest. *Lash v. Hollis*, 525 F.3d 636, 642–43 (8th Cir. 2008); *see Wal-Mart Stores, Inc. v. Barton*, 223 F.3d 770, 773 (8th Cir. 2000).

As we have previously recognized, the precise methodology the district court employs to determine a reasonable fee award consistent with the principles outlined above is within its broad discretion:

> There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment.

*Vaughan v. Must, Inc.*, 542 N.W.2d 533, 541 (Iowa 1996) (quoting *Hensley*, 461 U.S. at 436–37, 103 S. Ct. at 1941, 76 L. Ed. 2d at 52); *see Schaffer v. Frank Moyer Constr., Inc.*, 628 N.W.2d 11, 22 (Iowa 2001) (acknowledging the district court has broad discretion as to the amount of an attorney fee award even when awarding fees is mandatory). The

district court need not "sort out precisely hour by hour what legal work was performed to support what allegation." *Vaughan*, 542 N.W.2d at 541. Precisely how the district court determines an attorney fee award to reimburse Lee for fees she reasonably incurred in pursuit of her claims for prospective relief is within its discretion. Nonetheless, given the circumstances of this case, the court must reduce its initial award by the amount it determines is necessary to ensure it does not include fees and costs Lee incurred in proving aspects of her claims for retroactive relief that were wholly unrelated to the common core of facts or legal theories establishing her entitlement to prospective relief. *See Jenkins*, 491 U.S. at 284, 109 S. Ct. at 2469, 105 L. Ed. 2d at 240.

We recognize there is no precise methodology the district court must employ to calculate an appropriate award of attorney fees. However, whatever methodology the court employs, it must provide in its order "a concise but clear explanation of its reasons for the award." *Hensley*, 461 U.S. at 437, 103 S. Ct. at 1941, 76 L. Ed. 2d at 53; *see Dutcher*, 546 N.W.2d at 897.

**VIII. Disposition.**

We reverse the district court order of June 27, 2014, as to all attorney fees and costs it ordered the State to pay. On remand, the district court should enter an order awarding Lee attorney fees and costs she incurred in seeking prospective relief in accordance with the principles set forth in this opinion.

Costs of this appeal are assessed one-half to each party.

**REVERSED AND CASE REMANDED WITH INSTRUCTIONS.**