# IN THE COURT OF APPEALS OF IOWA

No. 17-1681
Filed February 20, 2019

**BRUCE SPAHR,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.

_____

Appeal from the Iowa District Court for Mahaska County, Randy S. DeGeest, Judge.

Bruce Spahr appeals the order denying his application for postconviction relief. **REVERSED AND REMANDED.**

R.E. Breckenridge of Breckenridge Law P.C., Ottumwa, for appellant.

Thomas J. Miller, Attorney General, and Zachary Miller and Tyler J. Buller, Assistant Attorneys General, for appellee State.

Considered by Potterfield, P.J., Doyle, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**DOYLE, Judge.**

Bruce Spahr appeals the order denying his application for postconviction relief (PCR), challenging his conviction for second-degree sexual abuse. He asserts claims of ineffective assistance of his trial, appellate, and PCR counsel. Because we conclude Spahr received ineffective assistance when his trial counsel failed to object to testimony that impermissibly bolstered the testimony of the complaining witness, we reverse the district court's judgment, remand for entry of an order vacating Spahr's conviction and sentence, and grant him a new trial.

## I. Background Facts and Proceedings.

The underlying conviction giving rise to this PCR action occurred after A.L. accused Spahr of sexually abusing her between 2003 and 2006. A jury found Spahr guilty of one count of second-degree sexual abuse of A.L. but acquitted Spahr of another count of second-degree sexual abuse of A.L. and of two counts of second-degree sexual abuse of R.L. The trial court ordered Spahr to serve a sentence of not more than twenty-five years in prison, requiring him to serve seventy-percent of his sentence.

Spahr directly appealed his conviction, arguing in part that his trial counsel was ineffective in failing to object to the following testimony from Deputy Sheriff Don DeKock, to whom A.L. reported the sexual abuse:

> Q. Did [A.L.'s] revelation catch you off guard? A. Yes and no.
> Q. Can you explain what you mean by that? A. You know, you can sometimes with—with victims of—of whatever, you can see something is not right here, something is going on with this student. It could just be how they react, maybe their response, etcetera, and at the same time that doesn't mean that they're a victim of sexual abuse. It may be something else. It could be suicidal, those types of things. So it—it's always yes and no to those type of questions.

Q. After that disclosure, what did you do? A. Contacted the Department of Human Services.

Q. And why did you contact the Department of Human Services? A. Because the named perpetrator in the allegation was her stepfather, which—who would be somebody who would be responsible for her care and which the Iowa law says we are to report to the Department of Human Services.

Q. So what happened next? A. Lacey Plants from the DHS—or the Department of Human Services, she and I did go to the residence, did speak with [A.L.'s mother] about the allegations. Talked to them—Talked to her about a visit to the Child Protection Center for both [A.L.] and her younger sister, [R.L.] And then—

Q. What was [her mother]'s reaction? A. —Right from the start I would question her supportiveness of either one of the two girls.

Q. Why is that? A. Just kind of somewhat how she reacted to us and some of how she answered some of the questions and etcetera.

The deputy also testified,

Because of, again, some things that were said and [the mother]'s reaction to the allegations and of what occurred, what was said by [A.L.] and [R.L.] at the—during the interviews and also to the doctor during the forensic exams, there was a concern for safety for the kids, and the decision was made to do a removal of [A.L.] and [R.L.] from [their mother]'s care and place them in foster care.

Spahr alleged that this testimony improperly bolstered A.L.'s credibility.

In addressing Spahr's ineffective-assistance claim, this court found Deputy DeKock's testimony was "substantially similar" to the testimony that our supreme court ruled inadmissible in *State v. Dudley*, 856 N.W.2d 668, 678 (Iowa 2014), stating:

Deputy DeKock's testimony as set out above—that he considered [the mother]'s reaction not to be supportive of the girls and that out of concern for the children they were immediately removed from the home and placed in foster care—is substantially similar to the testimony that was ruled inadmissible in *Dudley*. DeKock's testimony and action taken clearly imply he did not believe [the mother] and did believe the girls. Trial counsel did not object to DeKock's testimony

but whether trial counsel had a reason for not doing so cannot be determined.

*State v. Spahr*, No. 13-1935, 2015 WL 567565, at *4 (Iowa Ct. App. Feb. 11, 2015) (citation omitted). Because the record was inadequate to address the claim on direct appeal, we preserved the issue for a PCR proceeding to allow Spahr's trial counsel an opportunity to respond to the claim. *Id.*; *see also State v. Coil*, 264 N.W.2d 293, 296 (Iowa 1978) (observing that a lawyer is entitled to his or her day in court, especially when the lawyer's professional reputation is impugned).

The question of whether trial counsel was ineffective in failing to object to Deputy DeKock's testimony was one of several issues Spahr raised in his PCR application, and it was the only issue to survive the State's motion for summary disposition and be considered after an evidentiary hearing. At that hearing, Spahr's trial counsel testified, "I can't tell you as I sit here today 100 percent why" he did not object to Deputy DeKock's testimony but theorized that he missed the statement either because Spahr was talking to him during the deputy's testimony or because Deputy DeKock "speaks very rapidly on the stand." Trial counsel conceded that the deputy's testimony did not support his theory of the case and that he should have acted to keep the testimony out. Trial counsel then stated, "Do I believe I made a mistake? Yes, I believe I made a mistake, either not objecting to it or not asking for a recess to settle Mr. Spahr down. I believe I made a mistake."

The PCR court denied Spahr's PCR application, finding Spahr failed to prove both that counsel breached an essential duty and that he was prejudiced by trial counsel's failure to object to the deputy's testimony:

The Court notes that [trial counsel], in retrospect, believes he made an error. He also holds himself to a very high standard, even higher than that of a reasonably competent practitioner. This Court finds that DeKock's testimony was at best borderline bolstering. In *Dudley*, an expert testified that the expert believed the victim was telling the truth. Deputy DeKock made no such statement. His statements were couched in terms of State law required him to make a report to DHS because the named perpetrator was a stepfather.

This Court finds that [trial counsel] did not fail to perform an essential duty.

As to the second element, the Court finds that [Spahr] has not established by a preponderance of the evidence that the outcome of the trial would have been different even if [trial counsel] had objected and kept DeKock's testimony from the jury. [Trial counsel]'s strategy and implementation of the strategy was so successful that in three of the four counts, his client was found not guilty. This Court finds [Spahr] has not met his burden of proof.

(Citation omitted).

## II. Discussion.

On appeal, Spahr challenges the PCR court's finding that he failed to establish his claim of ineffective assistance of counsel.[1] Our review is de novo. *See Lamasters*, 821 N.W.2d at 862. In order to succeed on an ineffective-assistance claim, a PCR applicant must establish that counsel breached a duty and prejudice resulted. *See id.* at 856. We may affirm a ruling rejecting an ineffective-assistance claim if either element is lacking. *See id.*

---

[1] With regard to the finding that trial counsel did not breach a duty, Spahr argues the PCR court ignored the law of the case. *See Lee v. State*, 874 N.W.2d 631, 646 (Iowa 2016) ("[A]n appellate decision becomes the law of the case and is controlling on both the trial court and on any further appeals in the same case." (citation omitted)). The State counters that Spahr failed to preserve the law-of-the-case issue for appeal because he did not raise it below and the PCR court never ruled on it. *See Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012) (noting an issue must ordinarily be raised and decided by the district court before it can be decided on appeal). In deciding the case, we need not address this issue.

Deputy DeKock's testimony that he was not surprised by A.L.'s sexual-abuse allegation because he could "see something [was] not right" with A.L. intimated that the deputy had some ability to discern whether a child had experienced trauma consistent with sexual abuse and that A.L. appeared to him to be someone who had experienced such trauma. This testimony indirectly lends credence to A.L.'s claims, bolstering her credibility. *See State v. Jaquez*, 856 N.W.2d 663, 666 (Iowa 2014) ("[W]hen an expert witness testifies a child's demeanor or symptoms are consistent with child abuse, the expert crosses that very thin line and indirectly vouches for the victim's credibility, thereby commenting on the defendant's guilt or innocence."). The deputy also testified that after interviewing the mother and observing interviews with A.L. and R.L., there was a concern for the children's safety, leading to their removal from their mother's home and placement in foster care.[2] This testimony also indirectly vouched for A.L.'s credibility. *See State v. Brown*, 856 N.W.2d 685, 689 (Iowa 2014), as amended

---

[2] The State asserts that Spahr failed to preserve error on the claim that his trial counsel was ineffective in failing to object to Deputy DeKock's testimony that A.L. and R.L. were removed from the home. We disagree. In ruling on Spahr's direct appeal, this court referenced his ineffective-assistance claim generally as one relating to the deputy indirectly vouching for A.L.'s credibility. *See Spahr*, 2015 WL 567565, at *3-4. In its ruling on the motion for summary disposition, the PCR court notes that Spahr's ineffective-assistance claim "includes the claim specifically reserved by the Iowa Court of Appeals in its opinion." At the PCR hearing, trial counsel was asked if the deputy's testimony that A.L. was being removed from the home was part of the bolstering of A.L.'s credibility, and trial counsel replied, "Yes." In the brief in support of his PCR application, Spahr quotes from this court's decision on direct appeal from his criminal conviction, including the portion of the decision that states the portion of the deputy's testimony concerning the children's removal from the home and placement in foster care was substantially similar to the testimony deemed inadmissible in *Dudley*. Although the PCR court does not specifically reference this statement in its ruling on the PCR application, the court discusses the ineffective-assistance claim generally in finding that trial counsel did not breach a duty in failing to object because Deputy DeKock's testimony was "at best borderline bolstering."

(Feb. 23, 2015) (finding statement in report on medical assessment that an investigation into a child's sexual-abuse allegation was "clearly warranted" indirectly conveyed that the child was telling the truth because the purpose of the interview was to see if the child's complaints were credible and required further action); *Dudley*, 856 N.W.2d at 678 (holding forensic interviewer's testimony that she recommended the child alleging sexual abuse receive therapy and avoid the defendant was impermissible because the recommendations were based on the expert's opinion that the defendant sexually abused the child, which indirectly vouched for the child's credibility).

The State argues that the facts of this case are distinguishable from those in *Dudley* and similar cases because those cases concern expert witness testimony and Deputy DeKock was not testifying as an expert. Again, we disagree. Deputy DeKock testified that he had worked in law enforcement for thirty-one years. When asked if he had any specific training or experience in investigating sexual abuse cases, he stated he had been investigating child sexual abuse cases since "the middle '80s" and attended classes or conferences on the subject through the Child Protection Center and the Iowa Sex Crimes Investigators Association. When asked his specific duties as a deputy sheriff, he testified his duties were split between doing different school programs and doing "the child abuse sex crime investigations, online predator, people who deal with child pornography, etcetera." Deputy DeKock's experience and training sufficiently qualify him as an expert witness. *See Bitzan v. State*, No. 16-1943, 2018 WL 348092, at *3 (Iowa Ct. App. Jan. 10, 2018) (rejecting claim that nurse testified as a lay witness where the nurse testified in her capacity as a trauma professional, finding "[h]er role was no different

than the forensic interviewer and therapist in *Dudley* or the physicians who examined the children in *Brown* and *Jaquez*).

We conclude Deputy DeKock's testimony impermissibly vouched for A.L.'s credibility and was therefore inadmissible. The question is whether trial counsel breached a duty in failing to object to the testimony. On this issue, trial counsel testified at the PCR hearing that unequivocally that he made a mistake in failing to object. Because trial counsel was unable to offer any reason for his failure to object, we conclude he breached a duty.

We are then left with the question of prejudice. To establish prejudice, Spahr must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Palmer*, 791 N.W.2d 840, 850 (Iowa 2010) (citation omitted). To this end, Spahr "need only show that the probability of a different result is sufficient to undermine confidence in the outcome." *Id.*

The State presented no physical evidence of sexual abuse at Spahr's trial. The only evidence supporting a finding of guilt was the testimony of A.L. and R.L. Their statements in interviews, depositions, and at trial were often inconsistent. Both Spahr and the girls' mother testified in Spahr's defense. Because witness credibility played an integral part in the jury's decision-making, the impermissible testimony of Deputy DeKock that bolstered A.L.'s credibility undermines confidence in the verdict. *See Brown*, 856 N.W.2d at 689 (finding the defendant was prejudiced by the admission of impermissible vouching testimony where there was no physical evidence; the case depended entirely on the child's credibility and the expert's statement put a stamp of scientific certainty on the child's claims,

bolstering the child's testimony and tipping the scales against the defendant). Prejudice has been established.

Because Spahr has demonstrated ineffective assistance of trial counsel, we need not consider Spahr's remaining claims on appeal. We reverse the PCR court's order denying Spahr's PCR application. We remand to the district court for entry of an order vacating Spahr's conviction and sentence and granting him a new trial on one count of second-degree sexual assault.

**REVERSED AND REMANDED.**